Commonwealth *v.* Gamsby, Appellant.

Argued September 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Raymond B. Reinl*, for appellant.

*Stewart J. Greenleaf*, Assistant District Attorney, with him *William T. Nicholas*, First Assistant District Attorney, and *Milton O. Moss*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 29, 1976:

Judgment of sentence reversed and case remanded for further proceedings.

OPINION IN SUPPORT OF REVERSAL BY HOFFMAN, J.:

Appellant contends that the trial court erred in refusing to grant him a new trial based upon sworn affidavits of two persons[1] who heard another person confess to the crime for which appellant was convicted.

On February 8, 1973, Jill Jones, a fourteen year old high school student, was apprehended at Keith Valley Middle School in Horsham Township with several pills of demerol and darvon. On February 14, 1973, she told the Horsham Township police that she had purchased the pills from Allan Gamsby, appellant, on February 7, at a shopping mall near her home. On February 23, the police arrested appellant in his home. A search of his jacket produced a marijuana cigarette butt and several pieces of tin foil which tested positive for marijuana residue. Appellant was indicted for violation of The Controlled Substance, Drug, Device and Cosmetic Act.[2]

On May 21, 1974, the trial court found appellant guilty of five counts charged in the first indictment and not guilty of the sixth count and of the two counts of the

---

1. The opinion of the court below and the briefs of both parties refer consistently to affidavits filed by Walter Williams and John Connery. A review of the record fails to reveal an affidavit by Walter Williams; but, from the discussion by the court below, it may be inferred that an affidavit was filed and that it was substantially similar in content to the one filed by John Connery.

2. The Uniform Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §13; as amended October 26, 1972, P.L. 1048, No. 263, §1; 35 P.S. §780-113(a)(16). Amended subsequent to the arrest, Dec. 30, 1974, P.L. 1041, No. 340, §1.

second indictment.[3] The only testimony linking appellant to the February 7 sale of pills was that of Miss Jones. Miss Jones testified that she did not know her own home address; she did not recall when she first met appellant; she did not know for sure if she had ever seen appellant before or after the alleged transaction; she did not know how she learned appellant's name; and she did not know the names of persons who had supplied her with drugs on previous occasions. The only thing that Miss Jones was sure of was that appellant was the person who sold her the drugs found in her possession on February 8. Miss Jones further testified that she never discussed this event with any other person except the police.

Appellant testified that he had never sold drugs to any person, including Miss Jones. He admitted having been convicted of possession of marijuana and sentenced to two years' probation, but denied knowing that the marijuana "roach" found in his jacket was there. Further, he denied knowingly possessing or using any drugs or marijuana since his prior conviction.

Lynne Bonner, a classmate of Miss Jones, also testified on his behalf. Miss Bonner made it clear that she was not a friend of the appellant and that she was testifying only under the compulsion of a subpoena. She testified to three conversations with Miss Jones regarding the drug sale. The first conversation implicated

---

3. The first indictment, Criminal Action 1192 of 1973, contained six counts related to the transaction between appellant and Jill Jones. The last count, of which appellant was acquitted, related to possession of marijuana. The second indictment, Criminal Action 1193, charged in two counts possession and/or sale of marijuana and related to the small quantities found on appellant's person at the time of his arrest. Appellant's explanation of the presence of this marijuana was that he was unaware that he had not disposed of it after his prior arrest and conviction and that he had thought that he no longer had any marijuana in his possession. The court below apparently believed this testimony, because appellant was acquitted of all charges related to the possession of marijuana.

appellant as her supplier. In the second conversation, Miss Jones explained that she had lied to the police about appellant because she was protecting her boyfriend, Brian Burke. The third conversation occurred after Miss Bonner had received the witness subpoena. Miss Jones recanted her second conversation and told Miss Bonner that it was appellant and not Brian Burke who had sold her the drugs. On rebuttal, Miss Jones admitted that her prior testimony denying any discussions about the case was false but denied that she had ever implicated Brian Burke.

On January 3, 1975, appellant's Motion for a New Trial was denied. On January 17, appellant filed an Amended Motion for New Trial with an attached affidavit of John Connery. The amended motion and affidavit contended that on January 9, 1975, Brian Burke, appellant, Connery and several other persons attended a party together. When appellant arrived, an argument ensued between Burke and appellant over the fact that appellant had been wrongfully convicted of selling the drugs to Jill Jones. Connery alleged that Burke told appellant that he should not be angry at *him* because it was Jones and not he who had implicated appellant. Appellant then left the party. Later in the evening, during a discussion among Burke, Connery and Connery's brother-in-law, Walter Williams, Burke admitted that he and not appellant had supplied Jones with the drugs. Burke said that he would not admit to this in court but that he would be willing to testify that Jill Jones was a real "down freak", an apparent reference to drug dependency. Burke also threatened to kill appellant if he attempted to implicate Burke any further in this matter. On January 24, 1975, appellant's amended motion was denied. On January 28, appellant was sentenced to thirty days to twenty-three months in jail and to pay a fine of $100.00 and costs of prosecution. This appeal followed.

The instant appeal presents two difficult questions,

which are closely intertwined: (1) under what circumstances a hearsay declaration may be admitted if it states facts which are against the penal interest of the declarant; and (2) would the out-of-court declarations in the instant case warrant granting a new trial. The opinion of the court below suggests that "but for" the inadmissibility of the out-of-court declarations of Brian Burke, the motion for the new trial would have been granted. The trial judge believed that our Court's opinion in *Commonwealth v. Hackett*, 225 Pa. Superior Ct. 22, 307 A. 2d 334 (1973), precluded the admission of these hearsay declarations. He felt that *Hackett* required "the admission of declarations against penal interest [only] where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pre-trial or during the trial itself." *Commonwealth v. Hackett*, supra at 29-30, 307 A. 2d at 338. The lower court noted that the *Hackett* requirements of persuasive assurances of trustworthiness were criticized in the concurring opinion of Justice ROBERTS in *Commonwealth v. Nash*, 457 Pa. 296, 303, 324 A. 2d 344, 347 (1974); but stated that the more liberal standards embraced by the concurring opinion in *Nash* for admission of declarations against penal interest are not the law.

Unfortunately, the law on the subject of admissibility of declarations against penal interest is far from clear. The lead opinion in *Nash*, authored by Justice O'BRIEN and joined by Justice EAGEN, suggests that admission of hearsay declarations under the penal interest exception ought to be permitted when "... made and subsequently offered at trial under circumstances that provide considerable assurance of their reliability." *Commonwealth v. Nash*, supra at 302, 325 A. 2d at 346, quoting *Chambers v. Mississippi*, 410 U.S. 284, 300

(1973). However, the concurring opinion in *Nash*, in which Chief Justice JONES and Justice POMEROY joined, embraces the emerging view that would permit the admission of all declarations against penal interest provided "that the declaration states facts that are against the penal interest of the declarant, and that the declarant is unavailable at the time of trial. McCormick's Handbook of the Law of Evidence, §276 (2d ed. E. Cleary 1972)." *Commonwealth v. Nash*, supra at 309, 324 A. 2d at 350 (Concurring opinion by ROBERTS, J.).[4] The

---

4. The concurring opinion in *Commonwealth v. Nash*, supra at 305-306, n.4, 324 A. 2d at 348, n.4 states:

"I view as completely unacceptable the adoption of the guidelines enunciated in *Commonwealth v. Hackett*, 225 Pa. Superior Ct. 22, 307 A. 2d 334 (1973). In *Hackett*, the Superior Court instructed trial courts that the admissibility of declarations against penal interest was mandatory when they '(1) exculpate the defendant from the crimes for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pre-trial or during the trial itself.' Id. at 29-30, 307 A.2d at 338.

"These standards, in my judgment, are unduly restrictive of the trial court's discretion and impose irrelevant conditions on the admissibility of declarations against penal interest. By its nature, evidence lends itself only to ad hoc decisionmaking, with the decisions based on the particular facts and circumstances of a given case. As an appellate court, removed from the trial arena, we can only delimit the broad contours of admissibility. After all, it is the trial court's task, and duty, to weigh and sift in the first instance the facts and arguments for and against admissibility. In my view, a declaration against penal interest should be admitted if its proponent can show that the declaration states facts that are against the penal interest of the declarant, and that the declarant is unavailable at the time of trial. McCormick's Handbook of the Law of Evidence §276 (2d ed. E. Cleary 1972).

"More particularly, I find troublesome the requirement that declarations against penal interest must be 'inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant.' Who is a person of authority? Is his reliability at issue? Is the testimony of a bartender, who has never heard of or seen the accused, but to whom a declarant confesses guilt of the crime with which the accused is charged, not to

concurring opinion in *Nash* makes it clear that it would adopt these standards not because they are constitutionally compelled by *Chambers v. Mississippi*, supra, but because they are sound rules of evidence.

A second opportunity to clarify the rules for the admission of declarations against penal interest was presented to the Supreme Court in *Commonwealth v. Colon*, 462 Pa. 577, 337 A. 2d 554 (1975).[5] The opinion of the court, authored by Justice ROBERTS, reiterated the standards for admission of declarations against penal interest contained in the concurring opinion in *Nash*. Justice ROBERTS was joined this time by Chief Justice

---

be admitted because the bartender is not 'adverse,' but rather 'neutral'? Indeed, under the *Hackett* test, several of the witnesses in *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038 (1973), would not have been allowed to testify for they were friends both of Chambers and of the declarant. Like the instant case, and I suppose like many others, the participants in *Chambers* were closely linked by friendship and betrayal.

"In the view of the opinion announcing the judgment, the mandate in the instant case, see *Hackett; Chambers*, is constitutionally compelled. To my thinking, there is nothing in the United States or Pennsylvania Constitutions that requires the adoption of such wooden and specific standards for such a discretion-laden question as the admissibility of evidence."

5. *Commonwealth v. Colon*, supra, added one requirement to the rule proposed in the concurring opinion in *Nash*. *Colon* would require that the out-of-court declaration be relevant. That is to say, if the theory of the Commonwealth's case is that X and Y conspired to commit a crime, and if X declares that he alone committed the crime and that Y had no part in it, then the statement may be split into its inculpatory and exculpatory parts. The inculpatory portion of the declaration is against interest but irrelevant, hence inadmissible. The exculpatory portion of the declaration is not against the interest of the declarant. The analysis of *Colon* is inapposite in a case such as the instant one because it is not the Commonwealth's contention that both appellant and another sold drugs to the complaining witness, only appellant. The out-of-court declaration in the instant case is not only relevant because it exculpates appellant; but it is against interest because it inculpates the declarant.

JONES and Justice MANDARINO with Justices EAGEN, O'BRIEN, and NIX concurring in the result and Justice POMEROY concurring with an opinion in which he expressly endorsed "the plurality opinion in *Commonwealth v. Nash*, 457 Pa. 296, 324 A. 2d 344 (1974), which I joined, [which] 'recognized that declarations against interest are admissible as an exception to the hearsay rule because their trustworthiness is safeguarded by the improbability that a declaration would fabricate a statement which is contrary to his own interests.' " *Commonwealth v. Colon*, supra at 586, 337 A. 2d at 559 (Concurring opinion by POMEROY, J.). In any event, it is clear that the majority of our Supreme Court has endorsed the modern rule that declarations against penal interest have sufficient assurances of reliability to permit them to be admitted when the declarant is unavailable. See also 5 J. Wigmore, Evidence, §1477; McCormick, Evidence, §276 (2d ed. Cleary 1972).

In the instant case, the statements made to Connery and Williams by Brian Burke were definitely against Burke's penal interest. Burke also made clear his unwillingness to incriminate himself. In the ordinary course of events, we may assume that if subpoenaed to testify Burke would exercise his constitutional privilege against self-incrimination. He would, therefore, be unavailable within the meaning of the rule. Cf., *Commonwealth v. Nash*, supra; *Commonwealth v. Colon*, supra; McCormick, supra at §276. Thus, Burke's hearsay declaration would be admissible as a declaration against penal interest.

It must now be decided, however, whether this evidence requires that appellant be granted a new trial. The standards for granting a new trial based on after-discovered evidence were set forth in *Commonwealth v. Hanes*, 162 Pa. Superior Ct. 206, 209, 57 A. 2d 165 (1948), which require that the evidence in question: "(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by

the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted: *Commonwealth v. Moskovitz*, 142 Pa. Superior Ct. 325, 326, 16 A. 2d 317." See also *Commonwealth v. Mosteller*, 446 Pa. 83, 284 A. 2d 786 (1971); *Commonwealth v. Cooney*, 444 Pa. 416, 282 A.2d 29 (1971); *Commonwealth v. Bulted*, 443 Pa. 422, 279 A. 2d 158 (1971); *Commonwealth v. Mount*, 435 Pa. 419, 257 A. 2d 578 (1969); *Commonwealth v. Schuck*, 401 Pa. 222, 164 A. 2d 13 (1960).

The proffered evidence in the instant case was not available before or during trial - the statement was not made until after the trial. The reason why evidence of Brian Burke's guilt and appellant's innocence could not be discovered by exercise of due diligence before or during trial, if Connery and Williams are believed, was that Jill Jones actively concealed the true facts.

The after-discovered evidence is not merely corroborative or cumulative. Although Brian Burke's statements substantiate the testimony of Lynne Bonner, Miss Bonner's testimony was offered as a prior inconsistent statement to impeach Miss Jones' testimony, not as substantive evidence of Brian Burke's guilt. The testimony of Connery and Williams would be admissible as direct evidence of the innocence of appellant. Similarly, the evidence would not be offered primarily to impeach the credibility of the Commonwealth's chief witness.

Lastly, I believe that in the face of such equivocal testimony by Miss Jones, evidence that Brian Burke had confessed to the crime would be likely to produce the opposite result, i.e., create reasonable doubt as to appellant's guilt.

In *Commonwealth v. Cooney*, supra at 419, 282 A. 2d at 30, our Supreme Court stated: "Our scope of review of the lower Court's refusal to grant a new trial on the basis

of after-discovered evidence is whether the Court committed an abuse of discretion or an error of law which controlled the outcome of the case. *Commonwealth v. Swanson*, 432 Pa. [293] supra; *Commonwealth v. Coyle*, 415 Pa. 379, 203 A. 2d 782; *Commonwealth v. Green*, 396 Pa. 137, 151 A. 2d 241; *Commonwealth v. Gates*, 392 Pa. 557, 141 A. 2d 219."

The court below was placed in the unenviable position of attempting to divine the law controlling the admissibility of declarations against penal interest during a period when the law was in flux. However, in view of the expressed opinions of a majority of our Supreme Court on the subject, it would be an error of law to exclude otherwise admissible declarations against penal interest because they were not made before or during trial to reliable persons of authority or those having adverse interests to the declarant, as required by our Court's opinion in *Hackett*. It would serve no conceivable purpose to allow the guilty party to escape prosecution while an innocent person is punished. This is precisely the type of situation in which the court's power to grant a new trial is appropriately exer

Because I would hold that the out-of-court statements contained in the sworn affidavits presented to the court are admissible as declarations against penal interest and because I believe that this evidence if credited, would be sufficient to warrant granting a new trial on the basis of after-discovered evidence, I would reverse the judgment of sentence. However, it would be premature to order a new trial. Thus, I would remand to hold an evidentiary hearing on the amended motion for a new trial.

The judgment of sentence should be reversed and the case remanded for proceedings consistent with this opinion.

OPINION IN SUPPORT OF REVERSAL BY CERCONE, J.:

While I agree with Judge HOFFMAN that *Commonwealth v. Hackett*, 225 Superior Ct. 22 (1973), is no

longer good law, I am unable to subscribe to his viewpoint that the unavailability of the declarant, and the statement's being against his penal interest, are alone sufficient to warrant admitting the hearsay evidence.

As Professor Wigmore has repeatedly noted in his treatise on Evidence,[1] the principal defect of hearsay testimony which requires its exclusion is that it eliminates the opportunity of the opponent, in this case the Commonwealth, to cross-examine the *declarant*, and thereby expose defects in the declarant's credibility and perception or, perhaps, in his competence.[2] Hence, evidence which might only be lightly regarded, or totally disregarded, if the declarant were in court to give it, might be given considerably more weight because it has not been exposed to the scrutiny and probing of cross-examination. Its defects are concealed by its transmission in court by a person other than the declarant.

Exceptions to the hearsay rule exist, therefore, when circumstances demonstrate that there is a necessity that the evidence be received as hearsay, as when the declarant is dead or outside the jurisdiction of the court, and the circumstances establish the probability of trustworthiness of the hearsay.[3] Given the necessity to receive the hearsay, statements against penal interest are admissible because human experience teaches that ordinarily with regard to such serious matters, one is unlikely to be deliberately false or heedlessly incorrect.[4]

---

1. 5 Wigmore on Evidence, §§1360 et seq. (3d ed. 1940).

2. *Id.* at §1368. The fear of perjury by the witness testifying to the admission at trial is frequently cited as a reason for excluding statements against penal interest. However, the witness can be cross-examined on the question of whether the admission was in fact made, so that this objection has no more validity here than it has concerning other subjects of testimony, like alibi. See McCormick on Evidence §278 (2d ed. 1972).

3. 5 Wigmore, supra, note 1, §§1456-57.

4. *Id.*

*Commonwealth v. Hackett*, 225 Pa. Superior Ct. 22 (1973) was the first cautious step taken by the courts of Pennsylvania to admit out-of-court declarations against penal interest into evidence. I dissented in *Hackett* principally because of reservations I still hold about the credibility of the out-of-court declarant — I simply cannot ignore the likelihood that the source of such a declaration will be corrupt. Although this is not a case involving hard-bitten drug dealers and addicts, in that surrealistic underworld, especially, we can expect that fabricated admissions against penal interest will be common. An example of how that tactic might be successfully employed was proffered by the prosecution in *Chambers v. Mississippi*, 410 U.S. 284, 301-02, n. 21 (1973):

> "If the rule [excluding declarations against penal interest] were changed, A could be charged with the crime; B could tell C and D that he committed the crime; B *could go into hiding* and at A's trial C and D would testify as to B's admission of guilt; A could be acquitted and B would return to stand trial; B could then provide several witnesses to testify as to his whereabouts at the time of the crime. The testimony of those witnesses along with A's statement that he really committed the crime could result in B's acquittal. A would be barred from further prosecution because of the protection against double jeopardy. No one could be convicted of perjury as A did not testify at his first trial, B did not lie under oath, and C and D were truthful in their testimony."

While I am not disposed to disregard that ploy as far-fetched, I am admonished by the words of Professor Wigmore: "The truth is that any rule which hampers an honest man in exonerating himself is a bad rule, even if it also hampers a villain in falsely passing as an innocent."[5] This is, of course, true; some accommodation

---

5. 5 Wigmore, supra, note 1, §1457.

between these competing interests must be reached.

The preconditions of admissibility of declarations against interest set forth in *Hackett* were unnecessarily severe. For example, in requiring that the declaration must be made to a person in a position of authority, or a person whose interests are adverse to the declarant's, the rule excludes many such declarations which the circumstances otherwise indicate are trustworthy. Indeed, in many cases the most trustworthy declarations will be made to those in whom the declarant reposes confidence — his family or friends. To exclude those statements without scrutinizing the circumstances to determine whether other indicia of credibility appear can work a great injustice on the defendant. In this regard, I think Judge HOFFMAN is correct when he suggests that the Supreme Court is moving toward a more liberal rule concerning admissions against penal interests.

Nevertheless, because of the aforementioned problem of the corrupt source, I cannot agree that it is wise for us to model the exception for penal interest precisely after the exceptions for proprietary and pecuniary interests. See *Rudisill v. Cordes*, 333 Pa. 544 (1939). Foundationally, something more than proof only that the declarant is unavailable for trial, and that the declaration is indeed against his penal interests, should be required.

Both the Proposed Federal Rules of Evidence and the Uniform Rules of Evidence impose just such a further requirement — corroboration. Rule 804(b) of the Federal Rules requires that: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated." This additional requirement was designed to treat the very problem about which I am concerned, and goes to the admissibility of the declaration because the situation is one in which limiting instructions and rulings on the weight of the evidence would be ineffectual. See Proposed Federal Rule of Evidence, Rule 804, Advisory Committee Comment on Exception 4.

Even more stringently, Uniform Rule 804(b)(3) sets forth its corroboration requirement: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Therefore, I would require that, before a hearsay declaration against penal interest may be received into evidence, the proponent of the evidence must establish, to the satisfaction of the court in its discretion, that the trustworthiness of the declaration itself (not the fact that it was made) is corroborated either circumstantially or directly.

Indeed, Professors Wigmore and McCormick recognize that in some cases declarations against interest are not sufficiently trustworthy to be admitted. Thus, in their treatises Wigmore and McCormick suggest that declarations against interest should be inadmissible where the opponent establishes that the declarant had a motive to falsify.[6] This of course recognizes that even though a statement is prima faciedly against the interests of the declarant, it may nevertheless be untrustworthy. In my estimation, the corrupt source problem is sufficiently troublesome to require that we require the proponent of the evidence to go beyond the incriminating nature of the declaration and further establish its trustworthiness. This is especially so because a conspiracy to fabricate such evidence, clandestine as are all conspiracies, will be nearly impossible to prove given the absence of the out-of-court declarant and the testimonial privilege of the defendant. Hence, it is singularly appropriate in criminal cases that the proponent of the declaration corroborate its trustworthiness.[7]

---

6. 5 Wigmore, supra, note 1, §1467; McCormick, supra, note 2, §279.

7. It would be unwise to require that the defendant show *lack* of

Returning to the case at bar, in light of the fact that the question of the admissibility of the declaration against penal interest is compounded by its being after-acquired evidence, the court on remand would have to consider more than the bare question of the admissibility of the declaration. The court must further determine whether the evidence is sufficiently strong that it would likely compel a different result at the new trial. Hence, the court should decide whether the witness who is to testify to the statement is inherently incredible; and, whether the other evidence inculpating the defendant is so overwhelming that the declaration will be disregarded by the fact-finder.

Therefore, I would remand for a hearing wherein the court would determine whether: (1) The trustworthiness of the declaration is corroborated; (2) The witness who is to testify is credible; and (3) The Commonwealth's case is not overwhelmingly strong. Should the court determine that all three of these conditions obtain, appellant's motion for a new trial should be granted.

I would, therefore, reverse and remand for further proceedings consistent with this opinion.


OPINION IN SUPPORT OF REVERSAL BY VAN DER VOORT, J.:

I join in the Opinion of my colleague, Judge HOFFMAN, and I believe that an evidentiary hearing is necessary. My understanding is that if it would be determined at such a hearing that either Connery or

---

a motive to falsify for two reasons. First, that standard would require him to prove a negative, i.e., prove the non-existence of all of a host of potential motives to falsify. Second, corroborating evidence is a more direct means of establishing the question at hand — the trustworthiness of the declaration. Presumably, once a motive to falsify had been shown, the declaration would be excluded no matter how strong the other objective indicia of its trustworthiness may be.

Williams, or both, would testify that Burke said that he, and not the appellant had supplied Jones with drugs, then in that event an Order for a new trial would be appropriate. If, on the other hand, a hearing were held and a determination reached that neither of the alleged after-discovered witnesses would so testify, then, and only then, the judgment of sentence would properly stand affirmed.

OPINION IN SUPPORT OF REVERSAL BY SPAETH, J.:

Whereas Judge HOFFMAN would never require corroboration as a condition of admissibility of a declaration against penal interest, Judge CERCONE would always require corroboration. My view is in between. I would not require corroboration, but I would give the trial judge discretion to exclude the declaration if because there was no corroboration he found the declaration untrustworthy.

The moment one requires corroboration, the question arises, "How much corroboration?" In the Advisory Committee's comment to Fed.R.Evid. 804(a)(4), on which Judge CERCONE relies, it is said that "[t]he requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication." I am not sure, but I think this means the judge should be suspicious of the declaration, and insist upon a rather considerable amount of corroboration, although perhaps not so much as "clearly indicate[s] the trustworthiness" of the declaration, as provided by Uniform Rule 804(b)(3), also cited by Judge CERCONE. I would prefer to lean the other way, and resolve doubts in favor of admissibility, leaving it to the jury to assay the declaration; I suspect the jury will be as suspicious as the trial judge.

The other point in the case concerns remedy. Judge HOFFMAN would award a new trial if Connery testifies as in his affidavit and the lower court credits the testimony. Judge CERCONE, however, would not only require that the trustworthiness of Connery's testimony be cor-

roborated, but would also leave it to the lower court to decide whether, even if it were corroborated, there should be a new trial, this decision to be made according to the lower court's view of the strength of the Commonwealth's case. As I have said, I would not require corroboration. Assuming Connery's testimony is credited, I am with Judge HOFFMAN. Whether a new trial should be awarded is a question of law that we must decide; we are not to pass it back to the lower court. *See, e.g., Commonwealth v. Cooney,* 444 Pa. 416, 282 A.2d 29 (1971) (after-discovered evidence held merely corroborative by lower court; on appeal, held error and new trial awarded.)

DISSENTING OPINION BY PRICE, J.:

Following a non-jury trial on May 21, 1974, the appellant, Allan Gamsby, was convicted of violating Section 13 of The Uniform Controlled Substance, Drug, Device and Cosmetic Act.[1] The only issue raised on this appeal is whether the lower court erred in refusing to grant a new trial based on after-discovered evidence. I find no error in the lower court's action.

Testimony adduced at trial revealed that on February 7, 1973, appellant sold three demerol and four darvon capsules for $3.00 to Jill Jones. On February 8, 1973, Jill told a schoolmate about her purchase. Later that day, school authorities confiscated the pills and contacted the police, who interviewed Jill on February 14. At that time, Jill told the officers that she had purchased the drugs from appellant. Appellant denied having made the sale.

The defense called Lynne Bonner to impeach the credibility of Jill Jones. She testified that she had three telephone conversations with Jill concerning the sale. In the first, Jill told her that appellant made the sale. In the

---

1. Act of April 14, 1972, P.L. 233, No. 64, §13, *as amended* (35 P.S. §780-113(a)(16)).

second, Jill stated that her boyfriend, Brian Burke, sold her the pills, and also stated that she implicated appellant due to police pressure to name her supplier. The final conversation occurred after Lynne was subpoenaed as a defense witness. At that time, Jill stated that the appellant was the seller, and that Brian Burke was not involved.

On the basis of the totality of the evidence, the court below concluded that appellant was the seller, and adjudged him guilty. Appellant now contends that he should receive a new trial on the basis of evidence which he discovered subsequent to trial.

The after-discovered evidence which appellant contends warrants a new trial consists of the affidavit of appellant's friend, John Connery. Connery attested that on January 9, 1975, he and Walter Williams[2] attended a party with appellant and Brian Burke. When appellant learned that Burke was present, he left the party. Afterwards, Connery, Williams and Burke also left the party in order to obtain more beer. En route, Burke allegedly stated that he gave the pills to Jill but that he wouldn't admit it in court as he did not want to jeopardize his career in the Army. However, he asked Connery to tell appellant "to appeal to Court" and that he "would go to testify on his next leave." (NT 90a)

The Pennsylvania Supreme Court has stated that, in order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered following trial and must be such that it could not have been obtained at the trial by reasonable diligence. Moreover, it must not be cumulative or merely impeach credibility; it must be such as would likely compel a different result. *Commonwealth v. Bulted*, 443

---

2. There is nothing of record to indicate that Walter Williams also signed an affidavit concerning Burke's "admission." The motion for new trial based on after-discovered evidence discusses only the affidavit of John Connery, and only that affidavit is attached to the record.

Pa. 422, 279 A.2d 158 (1971); *Commonwealth v. Mount,* 435 Pa. 419, 257 A.2d 578 (1969).

My examination of the affidavit convinces me that its only permissible use might be to impeach the credibility of Jill Jones. My conclusion is based in large part upon the inadmissible hearsay statement[3] contained in the affidavit.

It is axiomatic that hearsay is not admissible at trial unless the statement constitutes an exception to the general rule. *See, e.g., Chambers v. Mississippi,* 410 U.S. 284 (1973). One exception recognized in Pennsylvania is a declaration against penal interest. *See Commonwealth v. Nash,* 457 Pa. 296, 324 A.2d 344 (1974).

The elements which must be satisfied before a statement will be considered a declaration against penal interest have been detailed in *Commonwealth v. Hackett,* 225 Pa. Superior Ct. 22, 29-30, 307 A.2d 334, 338 (1973):

> "Public policy, the fundamental principles of fairness and due process of law require the admission of declarations against penal interest where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pre-trial or during the trial itself."

Moreover, three Justices of the Pennsylvania Supreme Court have indicated their belief that before a declaration against penal interest may be admitted into evidence, the appellant must prove the declarant to be unavailable for trial. *See Commonwealth v. Nash,* 457 Pa. 296, 303, 324 A.2d 344 (1974) (Concurring Opinion of Mr. Justice ROBERTS). *See also, McCormick, Handbook of the Law of Evidence* §276 (E. Cleary ed. 1972).

---

3. Brian Burke's statement to John Connery that he sold the pills to Jill Jones is a hearsay declaration when offered to prove the truth of the matter asserted.

The statement involved in the instant case, *i.e.*, that Brian Burke gave the pills to Jill Jones, does not satisfy the standards enunciated in *Commonwealth v. Hackett, supra.* It was not made to a person of authority or to a person with interests adverse to the declarant. John Connery and Walter Williams were in no way associated with the crime, and it is not contended that they were "reliable persons of authority" within the meaning of *Hackett.* Moreover, the statement was not made until 9 months after appellant's trial was completed, in further violation of *Hackett.* These factors do not provide the "persuasive assurance of trustworthiness" required by *Commonwealth v. Nash, supra.*

As the Supreme Court stated in *Commonwealth v. Nash, supra:* "It is our view, and that of the Superior Court in *Commonwealth v. Hackett, supra,* that, by its decision in *Chambers, supra,* the Supreme Court did not intend that every declaration against penal interest must be admitted into evidence. Rather, it is only those hearsay declarations which 'were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability.' " 457 Pa. at 302, 324 A.2d at 346, *quoting Chambers v. Mississippi, supra* at 300.

Because I have determined that the hearsay statement does not fall within the exception as a declaration against penal interest, I must also conclude that the affidavit is inadmissible as substantive evidence against appellant. It could be used only to impeach the credibility of Jill Jones, which is merely cumulative to the impeaching testimony of Lynne Bonner. Therefore, this affidavit does not qualify as admissible after-discovered evidence, and the lower court correctly refused to grant a new trial on this basis.

I would affirm the judgment of the lower court.

WATKINS, P.J., and JACOBS, J., join in this dissenting opinion.