389 A.2d 1089
**COMMONWEALTH of Pennsylvania**

v.

**Michael STRUNK, Appellant.**

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided July 12, 1978.

1. The Act of January 24, 1966, P.L. (1965) 1534, § 1, *as amended* (35 P.S. § 1700–1).

Robert C. Brown, Jr., Easton, for appellant.

Michael E. Riskin, Assistant District Attorney, Bethlehem and John E. Gallagher, District Attorney, Easton, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This appeal arises from the judgment of sentence imposed upon appellant after conviction for neglect to support a bastard child. The issue for our consideration is whether the court below erred in refusing to permit appellant to testify about conversations with another man who allegedly stated that he, and not appellant, was father of the child. For the reasons that follow, we hold that this contention has been waived, and therefore affirm the judgment of the court below.

Linda White, the mother of the child, testified that after she and appellant became good friends, they had sexual intercourse from Memorial Day, 1974 until June 12, 1974, at which time appellant was incarcerated on an unrelated charge. The couple engaged in sexual relations on three or four occasions thereafter, while appellant was on furlough from prison, and in November 1974, a physician determined that the prosecutrix was pregnant. The child was born May 12, 1975.

Appellant testified that although he visited the prosecutrix while on furlough from prison, he did not recall having sexual relations with her because he had spent most of the day in question drinking in bars and smoking marijuana. He did not deny having sexual relations with Ms. White during the month of August, but only stated that he could not remember.

During trial, appellant sought to introduce evidence through his own testimony of conversations with one Louie Miller. In substance, the testimony would have related barroom conversations between the two men during which Miller stated that he, and not appellant, was father of the child. Appellant offered the statements as not being hearsay, and if hearsay, as exceptions to the hearsay rule as declarations against proprietary, pecuniary, and penal interests. The trial court denied admission of the statements, appellant was convicted and sentenced, and this appeal followed.

■ Appellant's initial assertion that the statements made by Miller were not hearsay is without merit. Hearsay is defined as "testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of the matter asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence § 246 (2d ed. 1972). In this case, the relevant matter asserted by Miller's statement was that Miller, not appellant, was father of the child. Accordingly, as to the issue of paternity, the statements were hearsay.

■ Appellant's assertion that the statements were admissible as declarations against the pecuniary and penal interests of Miller, is also unpersuasive. We need not determine which, if either, of these interests is at work in the present case, for regardless of the test utilized, the offeror of the evidence must demonstrate the unavailability of the out-of-court declarant *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975). Failure to demonstrate the unavailability of the declarant in this case compels us to hold that the offered conversations were not admissible on the issue of paternity as declarations against interest.

■ Finally, appellant contends that the conversations should have been admitted not to prove that Miller was father of the child, but to show the effect of the statements on appellant, and thereby negate the element of willful failure to support the child. We find this contention waived. Neither the lower court's opinion nor appellant's motion for a new trial raises or discusses this issue. By the rule of *Commonwealth v. Mobley*, 450 Pa. 431, 435, 301 A.2d 622 (1973), the offer in this case was deficient for failure to clearly state the legal purpose relied upon for the first time here. Nevertheless, under *Mobley*, the offer may still not be excluded if the relevancy of the evidence is readily apparent. As were the court below and appellant's own counsel, we are unable to say that the relevance of the conversations was readily apparent when offered below, and therefore find the offer insufficient.

For the foregoing reasons, the judgment of sentence is affirmed.

CERCONE, J., files a dissenting opinion.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

CERCONE, Judge, dissenting:

I dissent.

In November of 1975, a jury found appellant, Michael Strunk, guilty of violating Section 4323 of the Crimes Code,

"Neglect to Support Bastard." [1] After appellant's post-trial motions were denied, sentence was imposed and this appeal followed.

Appellant was accused by the prosecutrix of having fathered her child out of wedlock. At trial, the prosecutrix testified that she met appellant in February of 1973 and that on Memorial Day of 1974, they began having intercourse. She further testified that from that time until June 12, 1974, they had sexual intercourse every day. On June 12, 1974, appellant was incarcerated in the Northampton County Prison for the offense of operating a motor vehicle without a license. Both appellant and prosecutrix testified that on August 17, 1974, while on furlough from prison, appellant visited the prosecutrix. She testified they had sexual intercourse on that day and that at no time did she have sexual intercourse with anyone other than appellant. Appellant testified that he had been drinking in bars and smoking marihuana most of the day on August 17, and, although he remembered visiting the prosecutrix, he did not remember having sexual intercourse with her. Significantly, appellant did testify that such relations may have occurred. The child was born on May 12, 1975.

Prior to his opening statement, counsel for appellant requested permission from the trial court to refer to statements allegedly made to appellant by a Louie Miller. Counsel informed the court, in his offer of proof, that appellant was prepared to testify to having had barroom conversations with Mr. Miller during which Mr. Miller claimed to have fathered the child. The trial court denied counsel's request to refer to Mr. Miller's statement in his opening and ruled that such evidence would not be permitted at trial either through appellant or by means of questions or comments by counsel. Appellant alleges that this ruling was erroneous: first, because these out-of-court statements were not hearsay, with respect to one of the material facts, because they were not being offered to prove the truth of the assertions; and, second, because these statements were against the

1. 18 Pa.C.S. § 4323 (1973).

pecuniary and penal interests of an unavailable declarant, they were admissible as an exception to the hearsay prohibition.[2]

Initially, it must be determined if the out-of-court statements by Mr. Miller were hearsay. Traditionally, hearsay is defined as "testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion *to show the truth of matter asserted therein*, and thus resting for its value upon the credibility of the out-of-court asserter."[3] It is apparent that, on the question of paternity, the relevant matter asserted in the offered out-of-court oral statement by Mr. Miller was that Mr. Miller, not appellant, fathered the child. Therefore, insofar as these statements were offered on the issue of paternity, the statements were hearsay, and it must now be decided whether they are admissible as an exception to the hearsay prohibition.

Appellant argues that the proffered testimony was admissible on the issue of paternity because the declarations were against the pecuniary and penal interests of Louie Miller, and thus exceptions to the hearsay prohibition. In light of our recent decision in *Commonwealth v. Gamsby*, 239 Pa.Super. 566, 360 A.2d 741 (1976) it is apparent that the law in

**2.** Relying on *Commonwealth v. Mobley*, 450 Pa. 431, 301 A.2d 622 (1973), the majority holds that appellant's offer of proof was deficient in that it did not clearly state its legal purpose. However, *Mobley* also provides that even if an offer of proof is deficient in not clearly stating its legal purpose, "this deficiency is not sufficient to exclude an offer of proof if the *relevancy* of the evidence is readily apparent." 450 Pa. at 435, 301 A.2d at 625. [Emphasis added.] The relevancy of the offer in the instant case is clear both on the issue of paternity and on the issue of "willfulness." The only question is whether or not it is hearsay, and therefore, inadmissible despite its relevancy; a point of law which I resolve in appellant's favor in the text below. In light of the general evidentiary rule that all relevant evidence is admissible unless properly excluded, once the offer shows the evidence to be relevant the burden of the offerer is met. The majority appears to be confusing relevancy with admissibility. Moreover, appellate counsel did argue, inter alia, that the purported evidence was not hearsay. In my view, appellant's contention is not waived.

**3.** McCormick on Evidence § 246 (2d ed. 1972). [Emphasis added.]

Pennsylvania concerning the admissibility of declarations against penal interest is unsettled. In his Opinion in Support of Reversal in *Gamsby*, Judge Hoffman, joined by Judge Van der Voort, expressed the view that "declarations against penal interest have sufficient assurances of reliability to permit them to be admitted when the declarant is unavailable." 239 Pa.Super. at 573, 360 A.2d at 745. In my Opinion in Support of Reversal, I expressed the view that, in addition to findings of unavailability and declaration against penal interest, "the corrupt source problem is sufficiently troublesome to require the proponent of the evidence to go beyond the incriminating nature of the declaration and further establish its trustworthiness [by corroborative evidence]" 239 Pa.Super. at 579, 360 A.2d at 748. Judge Spaeth, in his Opinion in Support of Reversal, noted that while he would not require corroboration to admit the declaration he would "give the trial judge discretion to exclude the declaration if because there was no corroboration he found the declaration untrustworthy." 239 Pa.Super. at 581, 360 A.2d at 749. In his dissenting opinion in *Gamsby*, Judge Price was joined by President Judge Watkins and Judge Jacobs in expressing the view that not only must the declaration be against penal interest but the proponent of the evidence "must prove the declarant to be unavailable for trial. . . ." and that a "persuasive assurance of trustworthiness" is required before the out-of-court statements can be admitted into evidence. 239 Pa.Super. at 584, 360 A.2d at 751.

In the case at bar, the declaration is, arguably, a declaration against pecuniary interest rather than a declaration against penal interest. It is not a crime in this Commonwealth to have fathered a bastard child, but it is a crime to neglect to support a bastard child once paternity has been established. However, it would appear to be logical to classify the declaration "I fathered a bastard child" as a declaration against pecuniary interest with penal as well as civil sanctions if the pecuniary duty is not met.

I am of the opinion that regardless of the test for admissibility which should be utilized in a declaration of this kind, one element of the test must be a showing by the proponent of the evidence that the out-of-court declarant is unavailable. *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975).[4] Because there is no showing, in the case at bar, that Mr. Miller was unavailable, I find that whichever test is utilized, the lower court properly excluded the evidence. In neither his offer of proof to the lower court nor in his reasons for exceptions to the lower court's ruling did appellant's counsel even raise the contention that Mr. Miller was unavailable. The only statements in the record which could be construed as an attempt to contend unavailability of Mr. Miller were a result of cross examination of the prosecutrix by appellant's counsel.

> "Q. [By appellant's counsel] Where is Louie Miller today?
>
> A. [By Prosecutrix] I really don't know.
>
> Q. You have no idea where he is?
>
> A. No.
>
> Q. Could you get in touch with him if you wanted to?
>
> A. No, I could not.
>
> Q. He is not around?
>
> A. No."

The Federal Rules of Evidence, Rule 804(a)(5) defines unavailability as including situations in which the declarant "is absent from the hearing *and* the proponent of his statement has been unable to procure his attendance . . . or testimony by process or other reasonable means." [Emphasis added.] It is apparent that one who seeks to admit testimony that would otherwise be inadmissible as hearsay on the basis of a declaration against penal or pecuniary

4. In the Federal Rules of Evidence a proper distinction is drawn between those hearsay exceptions which apply regardless of whether the declarant is unavailable, Rule 803, and those hearsay exceptions which apply only when the declarant is unavailable, Rule 804. The statement against interest exception requires a showing of unavailability by the proponent of the statement for such hearsay to be admissible. Rule 804(b)(4).

interest must at least demonstrate that reasonable means were utilized to procure the declarant's attendance or testimony.[5] Returning to the case at bar, the prosecutrix's statement that she did not know where the declarant was does not rise to a showing of "unavailability," which is required if the hearsay statement is to be admitted. There was no showing that Mr. Miller was absent from the jurisdiction, that his testimony could not be procured by utilizing reasonable means, or that Mr. Miller would have invoked any constitutional privilege against self-incrimination had he in fact been in the courtroom. In light of the above analysis, I find that insofar as the statements were being offered on the issue of paternity, they were inadmissible as hearsay, and due to the fact that appellant failed to show the unavailability of declarant, these statements are not admissible as statements against interest.

The inquiry, however, cannot end with a determination that the declarations were inadmissible hearsay, because appellant further contends that said statements were admissible on the issue of "willfulness" in that they were being offered to show the state of mind of the appellant and thus his justification for failing to contribute support. I agree with appellant that if the statements by Mr. Miller were offered to show only that appellant had a good faith belief that he was not the father of the child, rather than to show that appellant was not, in fact, the father of the child, these statements were not hearsay. See Wigmore on Evidence § 1789 (3rd ed. 1940); McCormick on Evidence § 249 (2nd ed. 1972). Moreover, after careful consideration of both the language and spirit of 18 Pa.C.S. § 4323, I believe that if the statements were offered only to show their effect on appellant rather than showing appellant not to be the father, such statements are relevant on the issue of willful neglect or

5. It is important to note that the crucial factor is the unavailability of the declarant's testimony rather than the unavailability of the declarant. In some cases, although the declarant may be physically present in court, his testimony may, nevertheless, be unavailable due to his exercise of a privilege not to answer, mental incapacity, or the like. See, McCormick, supra note 3, § 253, *Commonwealth v. Colon*, supra at 583, 337 A.2d 554.

refusal to contribute reasonably, and were, therefore, improperly excluded.[6] 18 Pa.C.S. § 4323, Neglect to Support Bastard, provides, in pertinent part, that:

> "A person is guilty of a misdemeanor of the third degree if he, being a parent, willfully neglects or refuses to contribute reasonably to the support and maintenance of a child born out of lawful wedlock, whether within or without this Commonwealth."

Implicit in appellant's argument that Mr. Miller's statements were relevant even if they were not used to prove the truth of the matter asserted therein, is the contention that an honest belief, although erroneous, that Louie Miller was the father of the child is a valid defense to a prosecution for willful neglect or refusal to contribute reasonably to the support of a bastard child. With this contention, I agree and find that the lower court erred in not admitting Mr. Miller's statements for the purpose of determining the question of appellant's willful neglect.

Prior to the adoption of 18 Pa.C.S. § 4323, the issue of paternity could be adjudicated under the fornication and bastardy proceedings of the former Penal Code, 18 P.S. § 4506.[7] This adjudication of parentage was not a bar to a second prosecution under former 18 P.S. § 4732, which made it a misdemeanor to willfully neglect or refuse to support a bastard child. *Commonwealth v. Shook*, 211 Pa.Super. 413, 236 A.2d 559 (1967). Under present law, however, both the issue of paternity and willful neglect or refusal must be adjudicated in the same proceeding.

Although the term "willfully neglects or refuses" is not defined in Article D of the Crimes Code, "Offenses Against the Family," § 302(g) of the Crimes Code[8] provides: "A

---

**6.** Even though these statements were inadmissible as hearsay on the issue of paternity, the court erred in not allowing appellant to testify as to the statements while cautioning the jury that their only relevance goes to whether appellant *knew* that he was the father of the child, and that these statements are not to be considered in determining whether or not appellant was, in fact, the father of the child.

**7.** Reprinted, 18 Pa.C.S., Appendix (1973).

**8.** 18 Pa.C.S. § 302(g).

requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." Since paternity is a material element of the offense for which appellant was charged, we believe the better rule to be that in order to sustain a conviction for neglect to support a bastard child, a jury finding that a defendant knew he was the father of the child is required. Moreover, this court has recently held, in *Commonwealth ex rel. Yentzer v. Carpenter*, 240 Pa.Super. 202, 362 A.2d 1101 (1976) that ·a civil suit for support of an illegitimate child cannot be maintained "in the absence of a prior criminal determination of paternity, a waiver by the putative father of his right to have paternity determined in a criminal proceeding, or an admission of paternity." 240 Pa.Super. at 204, 362 A.2d at 1101.

I conclude, therefore, that a finding of at least two distinctly different elements are necessary to convict a defendant of a violation of 18 Pa.C.S. § 4323. First, paternity must be found beyond a reasonable doubt and then, if the defendant is a parent, he must be found to have willfully neglected or refused to contribute reasonably to the support and maintenance of that child knowing that he was a parent.[9]

In light of *Commonwealth ex rel. Yentzer v. Carpenter*, supra, the jury in the instant case should have returned a split verdict; that is, they should have separately indicated first, whether appellant was the father of the child and, second, whether his past failure to support was willful. The need for this procedure is apparent. Under *Yentzer*, it appears that the paternity of a child must be determined in a criminal trial before the child is entitled to support under the Civil Procedure Support Law.[10] Since "Bastardy" is no

9. A third element is, of course, that there be a child born out of lawful wedlock.

10. The question has never been raised whether our holding in *Commonwealth ex rel. Yentzer v. Carpenter*, supra, denied a child due process of law by requiring that paternity, and hence a child's right

longer a criminal offense, the instant statute provides the only vehicle for making that determination. Without a split verdict, however, a child's right to support from his natural father can be foreclosed simply because the father's past failure to support has not been willful.

Under the statute here in question, the accused can defend on two logically and practically consistent bases: (1) that he is not the father of the illegitimate child; and (2) that, even if he is the father, his past failure to support has not been willful because this failure was based on a good faith belief that the child was not his. The court's instruction would offer the jury these two theories upon which the defendant may be acquitted. If, after its deliberations, the jury found that the defendant was a parent, but that his failure or neglect to support had not been willful, a verdict of not guilty would be returned; but, this general verdict would conceal the jury's determination that the defendant was the father. This result is unjust for both the putative father and the illegitimate child. From the child's standpoint, even if collateral estoppel did not preclude the father's being tried again,[11] he would be confronted with the same two defenses; only then the father would have a jury verdict in his favor fortifying his alleged "good faith" belief that he is not the father of the child. Conversely, a putative father whom the jury believed "innocent" of bastardy would be denied the full benefit of that verdict, leaving him open to further prosecutions on the same charges. Furthermore, the number of prosecutions might only be limited by the tenacity of the child or his guardian. Indeed, the law of large numbers could be the child's principal ally. Hence, one is led inexorably to the conclusion that a special verdict is the only

to support, be established in a criminal proceeding by proof beyond a reasonable doubt.

11. Compare *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). And, see Schafer, Unresolved in the Law of Double Jeopardy: Waller and Ashe, 58 Cal.L.Rev. 391 (1970).

Of course, the second prosecution could only allege willful failure to support during the period following the first trial, and might be limited by the two year statute of limitations contained in 18 Pa.C.S. § 4323 (1973).

satisfactory solution to the otherwise vexing and indignifying protraction of such litigation.[12] Therefore, in future prosecutions under this section I believe that four questions should be answered by the jury. First: Do you find, beyond a reasonable doubt, that [name of child] is a child born out of lawful wedlock? If the answer to that question is yes, the jury is instructed to answer the second question: Do you find, beyond a reasonable doubt, that the defendant is a parent of [name of child]? If they answer yes then the jury must answer the third question: Do you find, beyond a reasonable doubt, that the defendant neglected or refused to contribute reasonably to the support and maintenance of [name of child]? If the jury answers in the affirmative then they are to go on to the fourth and final question: Do you find, beyond a reasonable doubt, that the neglect or refusal was willful?[13] The jury should further be instructed that they must take the questions in the order in which they are presented and that if they answer any question in the negative, their deliberations are to cease and they are to submit their special verdict to the judge.

Turning again to the facts of the instant case, the jury found appellant guilty of both paternity and willful non-support. The only error committed at trial concerned the willfulnesses of appellant's failure to support the child, an element of the offense which should have been separately determined by the jury. Theoretically, this error would not entitle appellant to a new trial on the questions of the illegitimacy of the child and his paternity. However, *Commonwealth ex rel. Wallace v. Burke*, 169 Pa.Super. 633, 636–37, 84 A.2d 254 (1951), mandates that when a court grants a new trial the effect of such an order is to set aside

12. Such a solution has been suggested as a substitute for the collateral estoppel doctrine in other criminal cases. See Developments of the Law-Res Judicata, 65 Harv.La.Rev. 818, 876 (1952).

13. These four questions correspond to the elements of the crime as set forth in 18 Pa.C.S. § 4323 (1973). See Proposed Pennsylvania Standard Jury Instructions, Criminal Subcommittee Drafts, § 15.-4323, p. 279.41 (1976).

the prior judgment and place the parties in the same position as if no previous trial had been held.

I would, therefore, reverse the judgment of sentence and remand for a new trial.