## Commonwealth v. Strube

*Joseph C. Madenspacher, Assistant District Attorney,* for Commonwealth.
*Samuel M. Mecum,* for defendant.

BROWN, *S.J.,* November 7, 1979—In this case defendant, William Michael Strube (Strube) has filed post trial motions following his conviction of feloniously delivering a controlled substance, to wit, cocaine, in violation of the Controlled Substance, Drug, Device and Cosmetic Act of 1972.

In addition to the usual reasons for a new trial and in arrest of judgment he assigns the following three other reasons which are the only ones briefed and argued:

1. Whether defendant is entitled to a new trial because the District Attorney knew or should have

known that certain trial testimony of a material Commonwealth witness was false.

2. Whether a new trial should be ordered because the trial judge contradictorily instructed the jury on the law of entrapment.

3. Whether a new trial should be granted in view of after-discovered evidence which would likely have caused a different jury verdict if it had been presented at trial.

According to the testimony, it appears that one Daniel Paul Krushinski (Krushinski) about whom this opinion concerns itself, called Strube on the telephone on August 28, 1978. Strube lived at R.D. 3, Columbia, Lancaster County, Pa. and Krushinski who was a special agent of the Narcotics Bureau also lived in Lancaster County.

According to Krushinski, he met Strube at the Bargain Town parking lot in Columbia, Pa., on August 28, 1978, about 9:00 p.m. Krushinski testified that he paid Strube $2,100 for one ounce of cocaine. This transaction took place while another agent, Robert Roderick, looked on from another car. Another agent and police officer watched the transaction from a nearby car, it appearing from the record that this transaction took place in Strube's car. Krushinski testified that he got the $2,100 for the purchase of the cocaine from agent Roderick, who was in the nearby car, and paid it to Strube and then Strube left as well as Krushinski. Agent Roderick and two other officers in a separate car who were conducting a surveillance of this transaction then departed.

There was testimony that Krushinski had Strube hold up the money so that agent Roderick and the other surveilling witnesses could see him count the money. He also testified that the cocaine was held

up in the car so that Roderick and the surveilling officers could see this action.

Strube on the other hand testified that Krushinski had called Strube on the telephone on August 28, 1978 to ask him if he would like to make $200. Strube, who testified that he needed the money, drove to the parking lot where Krushniski and undercover agent Roderick were waiting in a car in a parking lot connected with Bargain Town in Columbia, Pa. When he arrived, Krushinski got into Strube's car, had Strube drive around the building to a spot where agent Roderick could not see them, and pulled a Marlboro cigarette box out of his pocket. From the box, he took out what appeared to be an ounce of white powder, and laid the package on the car seat. Krushinski asked Strube to deliver the package directly to agent Roderick, but Strube refused. Krushinski, according to Strube's testimony, wanted the deal to appear to be effected between Strube and the agent. Krushinski suggested that Strube simply sit in his car, follow various instructions, and for that he would make $200. Krushinski made a few trips back and forth between the two parked vehicles and at one point asked Strube to hand him back the bag of cocaine from the car seat out through the passenger side window. Eventually, he re-entered the Strube vehicle with a wad of money in his hand, which totalled $2,100. Krushinski then directed Strube to hold the money up in the air so that agent Roderick could see him apparently counting it. This entire procedure was also observed from a nearby parking lot by the surveillance team of Detective Jan Walters of the Lancaster City Police and agent William Campbell of the Pennsylvania Justice Department, Drug Enforcement Agency. However, neither of these offi-

cers nor agent Roderick by their own admission could observe what transpired in Strube's car below the dashboard and seat level, nor could they hear any Strube-Krushinski conversation in the car, nor did they search Krushinski before or after the "deal." After riffling through the money, Strube brought the bills back down below the dashboard and seat level (out of view of the surveilling agents as well as agent Roderick) and gave the money back to Krushinski as directed. Krushinski then took out $200 for Strube.

On April 6, 1979, pursuant to Strube's motion for new trial on the basis of after-discovered evidence, the court ordered an evidentiary hearing which was held on April 27, 1979.

At the after-discovered evidence hearing, two witnesses by the names of Leigh Maser Ruby and her husband, Donald Ruby, testified as to earlier conversations that they had had with Daniel P. Krushinski. Leigh Maser Ruby, who formerly worked as an undercover informant in Chester County, Pa., recalled speaking with Krushinski on October 12, 1978, only one week after Strube had been arrested. She testified that Krushinski was at first reluctant to talk to her, but was satisfied as to her bona fides after making a phone call to the Harrisburg office of agent William Campbell of the State Drug Enforcement Agency. Krushinski then launched into a two or three hour self-incrim- inating discussion with Mrs. Ruby and her husband Donald, who joined the conversation shortly after his wife did, concerning the easy money he had made working as a drug informant in Lancaster County. In fact, Krushinski even suggested to the Rubys that they join him in his outrageous scheme, in which he would sell his own drugs to law en- forcement agents and make commissions on top of

that. More importantly, for the consideration of Strube's motion, Krushinski admitted facts which supported Strube's version of key events in the alleged drug deal of August 28, 1978 as an excerpt from the evidentiary hearing of April 27, 1979 will show:

"Q: [Mr. Mecum—defense counsel] Did he (Krushinski) mention at any time during the course of his conversation the name of Mike Strube or William Michael Strube.?

A: [Witness—Leigh Maser Ruby] Yes, sir, he did. He said when he originally came into this area he was given five target names that the State showed an interest in arresting and Mr. Strube's was on that list. He also stated later, he was telling us about a young man who he had been trying to get to deliver for him and he told us—he didn't say whether the delivery went down or anything of that nature but he told us that he had gone one night to deliver and that he had the guy in the car with him, Danny did say that it was his drugs, and that when he got there that this man didn't want to do—have anything to do with it. So that he went ahead and delivered to the agent, Danny did, and that when he brought the money back to the car he said that he told the sucker to hold the money up at the windows and make like he was counting it and he said that at least I got that much so I thought the buy would go down alright.

BY THE COURT:

Q: Did he say who that was?

A: Yes, he did. ·

Q: Who was it?

A: He said it was Mr. Strube."

Mr. Donald Ruby was the only other witness offered by either side during the after-discovered evi-

dence hearing. His recollection of the October 12, 1978 Krushinski conversation, as well as other later conversations with Krushinski, basically corroborated that of his wife. This included the statement that the Rubys had contacted Detective Luther Henry of the Lancaster City Police several times about Krushinski's admitted treachery shortly after October 12, 1978, and that nothing was apparently done about it. Ruby further verified his wife's assertions that Krushinski spoke to them only after telephoning agent Campbell to see if they were "all right" to talk to and that Krushinski tried actively to recruit the Rubys in his moneymaking scheme. Donald Ruby specifically recalled that he had again spoken to Krushinski approximately two weeks prior to Christmas, 1978, and that Krushinski had told him that Strube had not received the money for the cocaine transaction in Columbia, and in fact there was only one drug defendant whom Krushinski had "fingered" for prosecution who actually received a profit in exchange for drugs and he was one Steven Brunner.

No Commonwealth witnesses were offered at the evidentiary hearing to rebut the serious allegations made by the Rubys. Hence, the record now shows unrebutted and uncontradicted sworn testimony that Daniel P. Krushinski, an agent for the Commonwealth of Pennsylvania, admitted either directly or by implication that he:

(1) Committed perjury during Strube's trial by denying that he had supplied the cocaine and received nothing but a $210 commission on the deal;

(2) committed theft by deception in that he stole $1,900 of the state's money in the Bargain Town parking lot that night; and,

(3) unlawfully delivered his own controlled substance to agent Roderick in violation of the Act of

April 14, 1972, P.L. 233, as amended, 35 P.S. §780-113 to 130(a). (At trial, agent Roderick testified that to his knowledge Krushinski was not authorized to deliver cocaine in the Commonwealth of Pennsylvania.)

The record establishes that the Commonwealth may not successfully maintain that the after-discovered evidence is hearsay which is merely offered to impeach the witness' credibility (see, e.g., Com. v. Vickers, 260 Pa. Superior Ct. 469, 394 A. 2d 1022 (1978)), for the reasons that:

(1) As an agent for the Commonwealth, witness Krushinski was authorized to make statements which have the effect of being admissions binding on his principal. For constitutional purposes, the action of an individual law enforcement officer is the action of the state itself: Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed. 2d 660 (1979), citing Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676 (1879);

(2) Even if Krushinski's statements to the Rubys are not admissions as to entrapment on the part of the Commonwealth, his statements are declarations against his own penal interests and admissible substantively for that reason.

(3) Krushinski's prior inconsistent statements of October 12, 1978 (inconsistent, to say the least, with his trial testimony of February 16, 1979) are admissible as substantive proof of their truth as a result of the holding of Com. v. Loar, _____ Pa. Superior Ct. _____, 399 A. 2d 1110 (1979). Loar specifically held that prior inconsistent statements are substantively admissible whether they are sworn or unsworn, where the witness is in court and subject to cross-examination. Alternatively, even if Krushinski's statements as related by the Rubys are technically hearsay, the statements should be ad-

mitted because they carry significant indicia of reliability and demonstrate an enormous importance to the pursuit of the truth in this particular situation. See 5 Wigmore, Evidence §§1421-1422 (Chadbourn rev. 1974); see Spaeth, *J.*, concurring in Com. v. McIntosh, 258 Pa. Superior Ct. 101, 392 A. 2d 704 (1978).

Com. v. Gamsby, 239 Pa. Superior Ct. 566, 360 A. 2d 741 (1976), contains a summary of the considerations surrounding the decision whether or not a court should grant a new trial based on after-discovered evidence. A new trial should be granted where the proffered new testimony (1) would not be merely corroborative or cumulative; (2) would not be offered primarily to impeach the credibility of the Commonwealth's witness; (3) could not have been discovered prior to the trial through the exercise of reasonable diligence; and (4) would be likely to produce the opposite result of the jury verdict actually rendered.

From the above recital of the factual situation in this case and the law applicable thereto, the court determines that the four requirements for a new trial based on the after-discovered evidence rule have been met. Three of the four requirements are clearly met. The court determines that the requirement that it would not be offered primarily to impeach the credibility of the Commonwealth witness is met in that Krushinski's testimony is so crucial to the Commonwealth's case that it is not primarily offered for impeachment purposes but is substantive evidence and if false the testimony of these after-discovered witnesses should be heard.

Since the court will grant a new trial on the after-discovered evidence it will not and need not discuss the other two issues which were briefed and argued.

## ORDER

And now, November 7, 1979, for the reasons set forth in the foregoing opinion, the court sustains the motion of defendant, William Michael Strube, for a new trial and accordingly grants him a new trial.