## Commonwealth v. Hackett, Appellant.

Argued March 21, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*George P. O'Connell,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *J. David Bean,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 14, 1973:

This is an appeal from a judgment of sentence of possession of heroin and operating an automobile under the influence of a narcotic drug. Appellant contends that the trial court erred in excluding exculpatory evidence during the trial.

On November 13, 1971, at approximately 12:30 a.m., police found appellant unconscious at the wheel of his automobile. The motor was running, the headlights on, and the vehicle's wheels partially on the sidewalk. Officer McCallion of the Lansdale Police observed an empty vial, a tourniquet and an empty syringe with fresh blood on the car's front seat. Appellant was aroused and taken to the North Penn Hospital by the police for a suspected drug overdose. From there, police took appellant to the station, where upon request appellant stripped himself and was examined. No needle marks were found on his body. Appellant also gave a urine sample to the police. Chemical analysis of the urine established the presence of heroin.

At the time of trial, appellant offered the defense that he had been involuntarily drugged. He testified that at about 9:00 p.m., at a gas station where he was working, he consumed an unfinished soda, which had been left by one Dennis Keyser. Appellant said that after closing time, he drove to visit his mother and then proceeded to his sister's home in Phoenixville when he passed out behind the wheel. He denied injecting himself, and maintained that the soda contained the heroin which he had orally consumed, ignorant of its contents.

Appellant sought to have Dennis Keyser testify as a defense witness. The trial judge conducted an *in camera Greene* hearing,[1] at which he ascertained that Keyser would refuse to answer all questions on the basis of the Fifth Amendment privilege against self-incrimination. As a result of this hearing, the trial judge refused to permit appellant to call Keyser to the stand.[2]

The trial judge further refused to allow into evidence oral and written statements made by Keyser, which if believed, would have exculpated defendant entirely. Likewise, the trial judge refused to allow defense counsel to question Detectives Vance and Kulp about the significance of the lack of needle marks on the body of a suspected drug user. It is on the basis of these evidentiary rulings that appellant appeals his conviction.[3]

During the examination of Detective Vance, defense counsel asked if needle marks are easily found and identified on a person recently injected. Vance was then "Chief of Narcotics for the County Detectives." He had an extensive background in drug arrests and testified that he had conducted numerous physical examinations of drug offenders. The Commonwealth objected to the question propounded by defense counsel. The trial judge sustained the objection and stated that he would not permit testimony "as to the general fact" that drug addicts, as a class, have visible needle marks on their bodies since "it was not about the defendant nor was the issue relevant."

---

[1] *Commonwealth v. Greene*, 445 Pa. 228, 285 A. 2d 865 (1971).

[2] A witness may not be called to testify solely for the purpose of having him exercise his privilege against self-incrimination and the inferences to be drawn therefrom. *Commonwealth v. Greene*, supra; *Bowles v. U. S.*, 439 F. 2d 536 (D.C. Cir. 1970), cert. den. 401 U.S. 995.

[3] While appellant herein raises other alleged errors, an examination of the record reveals that only these evidentiary issues rise to reversible error, when taken as a whole.

As defendant's defense was that he had involuntarily consumed heroin orally, and because the paraphernalia found at the scene indicated drug injection, the issue of needle marks was quite relevant. If appellant's version were true, the presence of drug paraphernalia would be evidence that appellant had been "framed". Certainly, had the answer to the question posed to Detective Vance been in the affirmative, the fact that no needle marks were found on defendant's body would be highly relevant.

The extent of Keyser's role in bringing about appellant's drugged condition was critical to appellant's defense. Defense counsel made an offer of proof by way of oral and written statements made by Keyser to support appellant's defense. Counsel sought to call defendant's former private counsel, James J. McNamee, Esquire, who would have testified that Keyser had made an oral statement admitting to the fact that he had "fixed" appellant by putting heroin in the soda bottle. Appellant also sought to introduce a signed written statement made by Keyser which also described the circumstances of the heroin consumption and the motive for "fixing" appellant.

The trial judge refused both the admission of the written statements and the testimony of McNamee concerning oral admissions made to him by Keyser. The trial judge reasoned that such evidence was hearsay. In his opinion, Judge SMILLIE stated: "Unless they [the statements] fall within an exception to the hearsay rule, they are inadmissible. Since Keyser was present at trial but refused to testify, it would be reversible error to permit his statements, supposedly made to defense counsel or by letter to defendant, in evidence."

The declaration against interest exception to the hearsay rule has generally been limited to declarations against the declarant's pecuniary or propietary interest and not his penal interest. See *Donnelly v. U. S.*, 228

26

U.S. 243 (1913); Wigmore, Evidence §1476, p. 281 (3d ed. 1940); 162 A.L.R. 437, and cases cited therein.

Few cases in Pennsylvania have ever referred directly to the doctrine. In *Commonwealth v. Antonini,* 165 Pa. Superior Ct. 501, 69 A. 2d 436 (1949), our Court held that a written statement executed by decedent prior to his death which *inculpated* himself and the defendant in a criminal act could not be admitted. In the recent cases of *Commonwealth v. Honigman,* 216 Pa. Superior Ct. 303, 264 A. 2d 424 (1970) and *Commonwealth v. Somershoe,* 217 Pa. Superior Ct. 156, 269 A. 2d 149 (1970), this Court held that even if the evidence is *exculpatory,* it would not be admissible.

The dissenting opinion in *Honigman,* supra, pointed out the distinction between declarations that inculpate and those which exculpate a defendant. The Court in *Antonini,* at 507, stated: "Professor Wigmore severely criticises the majority opinion [*Donnelly v. U. S.,* supra], and states that the HOLMES dissent represents what the law is or ought to be, i.e., that a declaration against *penal* interest only is admissible. But neither Justice HOLMES in his dissent, nor Professor Wigmore in his treatise, ever contended that such declaration against interest, to wit, a confession, by a party deceased, could be received in evidence to *inculpate* another." (Emphasis in original.)

The dissenting opinion to *Honigman,* supra, called for the admission of declarations against penal interests, where the statements exculpate the defendant. In tracing the law in other jurisdictions, the opinion stated at 308-309:

" 'The rule in New York should be modernized to hold that an admission against penal interest will be received where material and where the person making the admission is dead, beyond the jurisdiction and thus not available; or where he is in court and refuses to testify as to the fact of the admission on the ground of

self-incrimination.' People v. Brown, supra at 91-94, N.Y.S. 2d at 827-29.

"The State of New York is not alone in reaching this conclusion. In 1964, the Supreme Court of California in an opinion by Justice TRAYNOR held that the admission of defendant's companion that heroin found on the ground was hers was admissible. People v. Spriggs, 60 Cal. 2d 868, 874-875, 389 P. 2d 377 (1964).

"Justice TRAYNOR, after discussing the general rule concerning the admissibility of declarations against penal interest, stated: "A declaration against penal interest is no less trustworthy. . . . [A] person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest. . . .'

"This analysis in these cases is certainly sound. A distinction which would allow the admission of declarations against insignificant, insubstantial pecuniary interests while excluding declarations which bear the potential of serious penal punishment, would appear to be untenable and without logical support."

In both *Honigman* and *Somershoe, supra,* the statements sought to be introduced were exculpatory in nature and were made to persons and at a time which evidenced the inherent truthworthiness of the content of those statements. In the instant case, an oral statement was made to an attorney, who was representing appellant; a signed written statement was made and sent to the appellant. Each statement was made prior to trial and would have corroborated appellant's defense. Furthermore, not only did the statements exculpate appellant from the alleged crime, but they inculpated the declarant as "framing" the appellant.

In light of a recent United States Supreme Court decision, the exclusion of exculpatory declarations against penal interest, where those statements are trustworthy, is a denial of due process of law. In *Chambers*

*v. Mississippi*, 410 U.S. 284, 12 Cr. L. Rep. 3150 (1973), the Supreme Court held that it was a denial of due process to refuse defense counsel the right to cross-examine a witness who on direct examination denied making any pre-trial statements and whose version of the crime was contradicted by prior written and oral statements made to the defendant and other persons. The Court said that it was reversible error to exclude the testimony of three witnesses to whom declarations by said witness were made. The High Court ruled that the statements were made "under circumstances that provided considerable assurance of their reliability." At 410 U.S. 284, 12 Cr. L. Rep. 3155.

The Supreme Court distinguished the *Chambers'* facts from those cases that traditionally excluded declarations against penal interest:

"This materialistic limitation on the declaration-against-interest hearsay exception appears to be accepted by most States in their criminal trial processes, although a number of States have discarded it. Declarations against penal interest have also been excluded in federal courts under the authority of Donnelly v. United States, 228 U.S. 243, 272-273 (1913), although exclusion would not be required under the newly proposed Federal Rules of Evidence. Exclusion, where the limitation prevails, is usually premised on the view that admission would lead to the frequent presentation of perjured testimony to the jury. It is believed that confessions of criminal activity are often motivated by extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interest. While that rationale has been the subject of considerable scholarly criticism, we need not decide in this case whether, under other circumstances, it might serve some valid state purpose by excluding untrustworthy testimony.

". . . [W]hatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminatory and unquestionably against interest. (Citations omitted.) McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution.

"We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment we establish no new principles of constitutional law. . . . Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Chambers,* supra at 410 U.S. 284, 12 Cr. L. 3154-3156.

In light of *Chambers,* we believe that the appellant was denied due process of law. Appellant was denied the opportunity to establish his defense to the offense for which he was tried and convicted. The "confessions" of Keyser made both to a member of the Bar of this Commonwealth and to the defendant were highly relevant and trustworthy. Clearly, absence of a fair opportunity to defend against the Commonwealth's accusations in a criminal trial constitutes a denial of due process of law under the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14 (1967); *In re Oliver,* 333 U.S. 257 (1948).

Public policy, the fundamental principles of fairness and due process of law require the admission of declarations against penal interest where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those

having adverse interests to the declarant; and, that they are made pre-trial or during the trial itself. Under these circumstances, an exception to the hearsay rule, in our view, is mandatory. The protection of innocent defendants must override any technical adherence to a policy that excludes evidence on the grounds of hearsay.

We, therefore, reverse and vacate the conviction, and remand the case for a new trial.

JACOBS, J., concurs in the result.

WATKINS and CERCONE, JJ., dissent.