665 A.2d 825

**COMMONWEALTH of Pennsylvania**

v.

**Alan PRESBURY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 7, 1995.

Filed Sept. 21, 1995.

5. Because of our disposition of the above issue, we need not address appellant's third claim.

David M. McGlaughlin, Philadelphia, for appellant.

Kathy L. Echternach, Assistant District Attorney, for Commonwealth, appellee.

Before MCEWEN, TAMILIA and KELLY, JJ.

TAMILIA, Judge:

Alan Presbury appeals from the May 16, 1994 judgment of sentence imposing a term of life imprisonment and consecutive

lesser sentences. Following a jury trial, appellant was convicted of first degree murder,[1] criminal conspiracy,[2] violation of the Uniform Firearms Act (UFA)[3] and possessing an instrument of crime.[4] The facts of this case, as recited by the trial court, are as follows.

On the morning of January 17, 1993, at around 9:00 a.m., the decedent, Brian Moore, walked down the 2200 block of Sergeant Street in North Philadelphia with a fifteen-year old girlfriend. Unbeknownst to Moore, [appellant] Presbury and [Maurice] Revels—disguised in black ski masks and armed with semi-automatic firearms—waited nearby in a stolen van for Moore to leave his home. Upon seeing Moore, defendants immediately rode along-side the couple, stopped the van, and emerged with their guns drawn. Moore, believing that he was the intended victim of a robbery, offered defendants his gold chain. Instead of accepting the chain, defendants told Moore that they wanted *him*.

Defendants pushed the girl aside and pursued Moore as he fled the scene. Although defendants shot Moore in the back, Moore continued running toward the neighborhood community center. Upon reaching the community center, Moore broke the center's door off its hinges and bolted up a flight of stairs to the second floor. Defendants tracked the terrified Moore to the second-floor front room of the community center and shot at Moore when they found him. With nowhere else to run, Moore jumped from the second floor window. As Moore lay immobile on the ground, defendant Presbury came to the second floor window that Moore had just leapt from and proceeded to shoot down at Moore. Meanwhile, having seen Moore jump, defendant Revels ran down the stairs and also fired at the prone

1. 18 Pa.C.S. § 2502(a).
2. *Id.,* § 903.
3. *Id.,* § 6106.
4. *Id.,* § 907.

Moore. Defendant Presbury soon joined defendant Revels at street-level in shooting Moore.

(Slip Op., Greenspan, J., 10/11/94, pp. 3–4.)

On March 3, 1994, a jury convicted appellant and Maurice Revels of the aforementioned charges.[5] Following a penalty hearing, the jury set the penalty for the first degree murder convictions at life imprisonment. The Honorable Jane Cutler Greenspan then imposed upon appellant and Revels the life terms recommended by the jury and consecutive terms of five (5) to ten (10) years' imprisonment for conspiracy and eighteen (18) months to five (5) years' imprisonment for violation of the UFA.

On appeal, appellant first argues that the trial court erred in denying his motion to sever his trial from that of co-defendant Revels. Appellant claims severance was proper because, unlike himself, Revels confessed to killing Brian Moore and his confession implicated appellant. Thus, reasons appellant, he was prejudiced by the admission of Revels' confession.

Criminal defendants may be joined where they allegedly participated in the same act or transaction. Pa.R.Crim.P. 1127(A)(2). Where conspiracy is charged, co-defendants should be tried together. *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438 (1985) (reargument denied), *appeal denied.* Further, "it is well established that a motion for severance is addressed to the sound discretion of the trial court, and that its decision will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Jones,* 530 Pa. 591, 602, 610 A.2d 931, 936 (1992) (reargument denied). In determining whether to sever certain defendants, the court must balance the need to minimize the prejudice that may be caused by consolidation against the general policy of encouraging judicial economy. *Commonwealth v. Patterson,* 519 Pa. 190, 546 A.2d 596 (1988). A better chance of acquittal from a

5. *Commonwealth v. Revels,* —— Pa.Super. ——, 667 A.2d 423 (unpublished memorandum filed August 7, 1995), petition for allocatur filed, No. 00594 E.Alloc.Dkt.1995.

separate trial is not sufficient cause to warrant severance. *See Commonwealth v. Katsafanas*, 318 Pa.Super. 143, 464 A.2d 1270 (1983). Rather, the defenses presented by the various defendants must be "irreconcilable and exclusive" and "conflict at the core" before the substantial prejudice burden is met. *Commonwealth v. Bennie*, 352 Pa.Super. 558, 566, 508 A.2d 1211, 1215 (1986).

Instantly, Revels' confession, which originally referred to appellant by name, was redacted prior to trial to refer to appellant only as "other guy." Nonetheless, appellant claims that he was deprived of his "confrontation and fair trial rights." (Appellant's brief at 10.) Appellant also claims he was deprived of his right to remain silent because he "was *forced* to testify to deny not only his involvement in this homicide, but [also] what his own co-defendant had stated in his confession." (Id.) While appellant never states it directly, the obvious implication of his argument is that the jury was able to identify appellant as "other guy" by reading the edited confession in light of other evidence presented at trial. This suggestion necessarily lies at the heart of appellant's argument because, without it, he would have had nothing to "confront" via cross-examination or "deny" upon taking the witness stand.

Modern law regarding the admissibility of a co-defendant's confession in a joint trial has its genesis in the landmark United States Supreme Court case of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Our Court has discussed *Bruton* as follows:

> In *Bruton*, co-defendant Evans' confession, which implicated Bruton in a robbery, was read to the jury. The trial court, in accord with *Delli Paoli v. U.S.*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) admitted the confession unedited and cautioned the jury that Evans' confession was inadmissible hearsay against Bruton and was to be considered only against Evans. Evans exercised his privilege not to testify. The Supreme Court set aside Bruton's conviction, overruling *Delli Paoli* because "of the substantial risk that the jury, despite instructions to the contrary, looked to

the incriminating extrajudicial statements in determining [Bruton's] guilt." 391 U.S. at 126, 88 S.Ct. at 1622. The Court emphasized that Evans' statement was "powerfully incriminating" as to Bruton since it directly inculpated him in the crime and that Evans' confession "added substantial, perhaps even critical, weight to the Government's case." id. at 128, 88 S.Ct. at 1623. The Court thus held that Bruton had been denied his right of confrontation since Evans' extrajudicial statement inculpating him went to the jury without Bruton having the opportunity to cross-examine Evans.

*Commonwealth v. Rawls,* 276 Pa.Super. 89, 94, 419 A.2d 109, 111 (1980).

In order to comply with the mandate of *Bruton,* Pennsylvania courts have approved the practice of redaction, whereby all testimonial references in a confession to anyone other than the declarant are omitted. *See Commonwealth v. Chestnut,* 511 Pa. 169, 512 A.2d 603 (1986); *Commonwealth v. Hess,* 378 Pa.Super. 221 n. 1, 548 A.2d 582 n. 1 (1988), *appeal denied,* 522 Pa. 618, 563 A.2d 887 (1989); *Commonwealth v. Council,* 355 Pa.Super. 442, 513 A.2d 1003 (1986), *appeal denied,* 519 Pa. 664, 548 A.2d 253 (1988); *Commonwealth v. Sanford,* 323 Pa.Super. 436, 470 A.2d 998 (1984); *Rawls, supra; Commonwealth v. Guess,* 266 Pa.Super. 359, 404 A.2d 1330 (1979).

In *Rawls,* we confronted the identical argument advanced by appellant herein, namely, that he was prejudiced by the admission of his co-defendant's confession, even though redacted, because the jury was able to associate appellant with the confession by reading it in light of other trial evidence. The *Rawls* Court, engaging in a comprehensive review of state and federal law, held as follows:

> In a number of cases, non-confessing defendants have argued "contextual inculpation" as does the instant appellant, viz: the edited confession, when read in light of other evidence connecting the defendant to the crime, tends to identify him as a participant, thus violating *Bruton.* The courts have consistently rejected such an argument and have found *Bruton* inapplicable since the redacted state-

ment was not "powerfully incriminating" as to the defendant. In [*U.S. v. Wingate*, 520 F.2d 309 (2d Cir., 1975) ], for example, a co-defendant's redacted confession had been admitted into evidence with cautionary instructions. The complaining defendant (Wingate) argued that the statement, read in light of other evidence connecting him with the declarant, tended to identify him as a co-conspirator. The Second Circuit disagreed reasoning that the co-defendant's statement did not sufficiently incriminate Wingate inasmuch as, "[O]nly when combined with considerable other evidence, which amply established Wingate's guilt [did] the statements tend to incriminate him." 520 F.2d at 314. Similarly, in *U.S. ex rel. Nelson v. Follette*, 430 F.2d 1055 (2 Cir., 1970) two defendants, Biggins and Nelson, were tried jointly for a bank robbery. Biggins confessed, naming one "Oliver" as his accomplice and physically describing "Oliver". The confession also stated that Biggins and "Oliver" were at a certain bar just prior to the robbery. Other evidence at the trial established a close physical resemblance between Nelson and "Oliver" and further that Nelson and Biggins were often seen together at the bar mentioned in the confession. Nelson contended that confession, considered in light of the other evidence, "necessarily implicated" him as "Oliver". The court held no *Bruton* violation had occurred: "Biggins' statements were not clearly inculpatory because they alone did not serve to connect Nelson with the crime ... Biggins' statements were not the type of powerfully incriminating statements to which the court had reference in *Bruton*." 430 F.2d at 1058.

In *U.S. v. Holleman*, 575 F.2d 139 (7 Cir., 1978); *U.S. v. Knuckles*, 581 F.2d 305 (2 Cir., 1978); *U.S. v. English*, 501 F.2d 1254 (7 Cir., 1974); and *U.S. v. Lipowitz*, 407 F.2d 597 (3 Cir., 1969), the specific names of the defendants were excised from the confessors' statements and substituted with such words as "other individuals", "other persons", "we", "a male individual". In each case, the defendant whose name had been deleted alleged that the redaction was insufficient since the confession, when considered along with

other evidence, clearly revealed the defendant to be the "male individual" or "other person" referred to in the confession. In each case, the court rejected this argument finding the statement, as edited, did not mention the defendant by name, was not "clearly inculpatory" as to him, and thus not "powerfully incriminating."... We think the reasoning of the foregoing cases is dispositive of the instant appeal.

*Rawls, supra* at 95–96, 419 A.2d at 112.

In *Chestnut, supra,* our Supreme Court, citing *Rawls,* also rejected the "contextual implication" argument of an appellant whose co-defendant's confession was redacted and introduced at trial. *Id.* at 173, 512 A.2d at 605 (allowing such an argument "would have the likely effect of making all statements by a co-defendant inadmissible, regardless of whether they could be properly redacted.").

■ Based on the foregoing authority, we find that the admission of Revels' edited confession did not unconstitutionally prejudice appellant. Appellant was not named in the confession as edited. Reference was made to "other guy", but not to anyone by name. Revels' confession implicated no one but Revels and, unlike the confession in *Bruton,* it did not shift responsibility to appellant. Revels' confession implicated appellant only insofar as "other evidence" tied appellant to the murder and to Revels, but we do not believe that the confession, standing alone, is "powerfully incriminating" to appellant since it alone did not connect him with the crime. *Rawls, supra* at 97, 419 A.2d at 113, *citing U.S. v. Belle,* 593 F.2d 487, 494 (3 Cir., 1979). Moreover, Revels took the stand and was cross-examined by appellant's counsel concerning the confession, at which time Revels denied making the statement and denied that appellant was involved in the shooting (N.T., 3/1/94, p. 114). Thus, the constitutional underpinning of Bruton—the Sixth Amendment right of confrontation and cross-examination—was not offended at appellant's trial.[6] *Rawls,*

6. On this basis, we distinguish *Commonwealth v. Oliver,* 431 Pa.Super. 1, 635 A.2d 1042 (1993), a case cited by appellant. *Oliver* explicitly

*supra.* We also note that the jury was instructed not to use any part of Revels' statement against appellant (N.T., 3/2/94, pp. 204–205).

Additionally, we find that Revels' confession was not in any way "critical" to the Commonwealth's case against appellant, as contemplated by *Bruton.* No less than three witnesses testified appellant and Revels both admitted that they had killed Brian Moore. Two of these witnesses also testified appellant and Revels told them that they had targeted the victim because he had robbed them in the past. One witness, Christopher Perrin, whose preliminary hearing testimony was admitted because of his death prior to trial, testified that he saw the black ski masks and guns used in the killing in the possession of appellant and Revels (N.T., 5/14/93, p. 133). Hence, Revels' statement was not the type of incrimination which would lend "substantial, perhaps critical, weight" to the Commonwealth's case against appellant. We therefore conclude the introduction of Revels' confession did not contravene *Bruton* or violate his constitutional rights to remain silent or confront witnesses. Thus, as appellant's motion to sever was premised on the argument that the admission of Revels' confession unconstitutionally prejudiced his case, it was properly denied.

Appellant next contends that the trial court erred in admitting at trial the incriminating preliminary hearing testimony of Christopher Perrin, who died prior to trial. Specifically, appellant claims that he lacked a "full and fair opportunity to cross-examine" Perrin. (Appellant's brief at 17.)

The admission of an unavailable witness' prior recorded preliminary hearing testimony is permitted if the defendant was represented by counsel and had a full opportunity to cross-examine the witness. *Commonwealth v. Carbaugh,* 423 Pa.Super. 178, 620 A.2d 1169 (1993); *Chestnut,*

turned on the fact that the appellant therein had no opportunity to cross-examine his co-defendant. *Id.* at 5, 635 A.2d at 1044. Further, unlike the instant case, the *Oliver* court found that other evidence of appellant's guilt was "far from overwhelming." *Id.* at 8, 635 A.2d at 1045.

*supra.* At the preliminary hearing in the instant case, appellant was present, had counsel, and was afforded and exercised the opportunity to cross-examine Perrin. Nonetheless, appellant claims that his opportunity to cross-examine was not "full and fair", (Appellant's brief at 20), because: (1) "the court would not allow counsel to explore Perrin's reputation and drug dealing activities" (Appellant's brief at 19); (2) "counsel was not permitted to explore why or on what basis Perrin was not charged or what agreements were made when he was obviously a co-conspirator", *id.;* and (3) "the court was obviously in a hurry," (Appellant's brief at 18).

As to contention (1), we are unable to locate, and appellant does not direct our attention to, any attempt by appellant's counsel at the preliminary hearing to broach the reputation or drug dealing activities of Perrin. As to drug dealing, however, Revels' attorney cross-examined Perrin as follows:

Q. Is Brian Moore a drug dealer?

A. Yes.

Q. How did you know that?

A. Who ain't no drug dealer?

Q. So you are too?

Yes or no?

. . . . .

Q. Yes or no, sir?

A. Yeah.

Q. So when you were selling drugs, did you sell in an area near Brian Moore?

A. No.

Q. So he had his own turf?

A. Yeah.

Q. And you had your own turf?

A. Yeah.

(N.T., 5/13/93, pp. 141–142.)

Thus, since evidence of drug dealing by Perrin was elicited by the counsel for Revels, any attempt by appellant's counsel

to elicit the evidence would have been repetitive. Likewise, as to appellant's contention (2), Revels' counsel elicited the following on cross-examination:

Q. Were you advised if you cooperated with the police and gave them a statement, that you would not be charged with murder?

A. No.

.    .    .    .    .

Q. Were you ever told that if you gave statements implicating these two people or putting these two men into the killing of Brian Moore, that you would not have charges brought against you?

A. You asked me that, I answered you.

Q. Thank you, I appreciate you pointing that out to me. Now what's the answer?

A. No.

Q. No?

THE COURT: Answer is no.

BY MR. STEIN:

Q. And have you been charged?

A. No.

Q. And everything you said here today you told the police; is that right?

A. Yes.

Q. So in other words, after you gave your statement each time, each of the four statements you gave, the police let you get up and walk out of the police station; is that right?

A. Yes.

(N.T. at 162–164.) Again, since the topic of a deal by Perrin with the prosecutors in exchange for his testimony was covered by Revels' attorney on cross-examination, appellant cannot complain that his cross-examination was unfairly limited.

Finally, we reject appellant's claim that the preliminary hearing court was "in a hurry." Perrin's testimony, the need for which appellant characterizes as "minimal", (Appellant's

brief at 19), totals 111 pages, 32 of which are devoted to cross-examination. While the cross-examination by appellant's attorney covers only eight of those pages, this is clearly due to the extensive cross-examination by Revels' attorney, who proceeded prior to appellant's attorney and aggressively probed every aspect of Perrin's story. Further, the court only sustained objections to questions by appellant's counsel that were clearly argumentative (*see* N.T., 5/13/93, pp. 166, 167, 169, 170). In sum, our thorough review of the preliminary hearing transcript reveals that the cross-examination of Perrin was full and fair. Its admission at the subsequent trial of appellant was therefore proper. *Carbaugh, Chestnut, supra.*

Appellant next contends that the trial court erred in permitting the jury to consider as substantive evidence the prior inconsistent statements of a Commonwealth witness, Leatrice Jones. Ms. Jones testified at trial that Maurice Revels merely accompanied her to a gun store to buy what subsequently became one of the weapons used to murder Brian Moore. Jones, however, denied that Revels had specifically instructed her to buy the weapon or that he had stolen the gun from her house prior to the killing. This testimony was inconsistent with a prior statement which Jones had given to police on March 1, 1993. The statement was handwritten verbatim by the police and had been signed by Jones. When confronted with the statement at trial, Jones denied making many of the comments attributed to her. Jones conceded, however, that she had made a statement to police and that she made corrections and initialed each page before signing the statement.

Appellant now argues that the statement should not have been submitted to the jury as substantive evidence because, at trial, "Leatrice Jones denied making many of the statements the Commonwealth attempted to attribute to her. As such, she did not adopt her prior statements. It is only where the witness admits the prior statements were made by them which will justify the charge on substantive evidence given here." (Appellant's brief at 23.) We reject appellant's

claim that a witness must adopt, *at trial,* a prior inconsistent statement before it can be submitted as substantive evidence.

In *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992), our Supreme Court set forth, as follows, the circumstances under which a prior inconsistent statement may be admitted as substantive evidence:

> [W]e now hold that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.

*Lively, supra* at 471, 610 A.2d at 10. In rejecting the identical claim raised by appellant herein, our Court has applied *Lively* as follows:

> Contrary to appellant's suggestion, there is no requirement that a witness, at the time of trial, adopt his or her prior statement as being truthful in order for the statement to be admissible under *Commonwealth v. Lively supra.* If this were so, the statement would not be inconsistent with the witness's trial testimony and there would be no need to introduce the prior statement. The requirement of *Lively* is that a prior inconsistent statement, which has been reduced to writing, will be admissible as substantive evidence if the statement, at the time when it was made, was signed and adopted by the witness. This requirement is to ensure that the witness's prior statement be accurately memorialized, as where prior testimony has been transcribed or where a prior statement has been recorded verbatim.

*Commonwealth v. Jones,* 434 Pa.Super. 469, 476, 644 A.2d 177, 180 (1994).

Instantly, the prior statement was signed and adopted by Jones at the time the statement was made. Moreover, at trial, she acknowledged making a statement to police and admitted making some of the comments attributed to her. Finally, we note that the statement in question satisfied *Lively*

as "a statement that is a contemporaneous verbatim recording of the witness's statement." *Lively, supra* at 471, 610 A.2d at 10; *see also Commonwealth v. Ragan*, 538 Pa. 2, 17, 645 A.2d 811, 818 (1994) ("Such a statement, which was not only recorded verbatim contemporaneously but also reduced 'to writing and signed by the declarant, clearly satisfies the requirements of *Lively* ). Under these circumstances, we hold that the requirements of *Lively* were met. Thus, the prior inconsistent statement of Leatrice Jones was properly admitted as substantive evidence. *Ragan, Jones, supra.*

Appellant's fourth contention on appeal is that the trial court erred in refusing to allow the testimony of Deborah Griffin, Esquire, to the effect that her deceased client, Christopher Perrin, admitted his complicity in the murder of Brian Moore and that he had stolen one of the murder weapons. Appellant claims that these statements "are clearly admissible as exceptions to the hearsay rule because they are admissions against penal interest." (Appellant's brief at 21.) The alleged admission occurred during Attorney Griffin's representation of Perrin while he testified at the preliminary hearing in this case.

Our Supreme Court has discussed the hearsay exception asserted by appellant as follows:

> Public policy, the fundamental principles of fairness and due process of law require the admission of declarations against penal interest where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and, that they are made pre-trial or during the trial itself.

*Commonwealth v. Hackett*, 225 Pa.Super. 22, 29–30, 307 A.2d 334 (1973).

Unfortunately, our review of appellant's claim is hampered by the apparent unavailability of the trial transcripts of February 22 and 25, 1994. While both the Commonwealth and appellant cite these transcripts, they have not been pro-

vided for our review, and neither party provides a verbatim account of the statements allegedly made by Perrin. This deficiency is critical because the application of the *Hackett* rules turns on the precise nature of the statement allegedly uttered.

Appellant characterizes Perrin's statement as follows:

Christopher Perrin admitted to [Attorney Griffin] not only that he shot Brian Moore, but that he stole one of the weapons used in the shooting.

(Appellant's brief at 21.) The Commonwealth describes the statement thusly:

[Perrin allegedly] admitted to [Attorney Griffin] that he shot the victim and then stole the murder weapon.

(Commonwealth's brief at 26.) The difficulty with Perrin's alleged statement, *as characterized by the parties,* is that it does not "exculpate the defendant from the crime for which he is charged," as required by prong (1) of *Hackett, supra.* Since two individuals murdered Moore, and Perrin was a known associate of appellant, Perrin's inculpatory statement does not appear to necessarily exculpate appellant. However, since we have not been provided with relevant trial transcripts, we are simply unable to determine exactly what Perrin allegedly told Attorney Griffin. Thus, meaningful review is effectively precluded and we are unable to find that the trial court abused its discretion or committed an error of law by refusing to allow Griffin's testimony into evidence.[7]

7. As to the "inherently trustworthy" requirement of *Hackett,* the trial court found as follows:

Additionally, it is noteworthy in this case that Attorney Griffin's testimony is highly suspect as well. Although Attorney Griffin had been suspended from the practice of law at the time of the trial (N.T. 2/17/94: 6–7), she did represent defendant Revels' girlfriend who testified to buying one of the guns used in Brian Moore's murder. N.T. 2/25/94: 88 & 93. Attorney Griffin's representation of and closeness to defendant Revels' girlfriend constitutes both a conflict of interest and a bias in favor of Revels. Simply put, an attorney who has been paid in the course of representation should not be permitted to become a witness on behalf of a party to whom the attorney's client is closely connected.

(Slip Op., Greenspan, J., 10/11/94, pp. 13–15.)

Appellant's final contention is that the trial court erred in denying a defense motion to produce all Philadelphia Police Department daily activity sheets. However, as noted by the trial court, it did order that all daily activity sheets be turned over to the defense and later found that the district attorney had complied with the court's Order. (Slip Op., Greenspan, J., 10/11/94, p. 6.) In his brief, appellant offers absolutely no evidence to the contrary, beyond the bald assertion that he did not receive all activity sheets. Hence, appellant's final claim fails.

Based on the foregoing, we affirm the May 16, 1994 judgment of sentence imposing a term of life imprisonment and consecutive lesser sentences.

Judgment of sentence affirmed.