J-S16010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAZARO ORTIZ BAEZ | : | |
| | : | |
| Appellant | : | No. 1632 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 24, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-3678-2019

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED AUGUST 12, 2024**

Lazaro Ortiz Baez ("Ortiz Baez") appeals from the judgment of sentence imposed following his convictions for four counts of unlawful contact with a minor, two counts of rape of a child, and one count each of involuntary deviate sexual intercourse with a child ("IDSI"), endangering the welfare of a child, indecent exposure, and indecent assault of a person less than thirteen years of age.[1] We affirm.

In 2019, three female complainants, K.E.F., D.A.E., and L.M.A., reported individual incidents of sexual abuse by Ortiz Baez which occurred between 2003 and 2011 when they were all young children living in the same community as Ortiz Baez on Pemberton Road in Chester County. K.E.F. had

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 6318(a)(1), 3121(c), 3123(b), 4304(a), 3127(a), 326(a)(7).

previously reported a portion of the sexual abuse by Ortiz Baez in 2004, when she was six years old; however, no charges were filed at that time. In late 2019, Ortiz Baez was arrested and charged at the above docket with a multitude of crimes relating to his alleged sexual abuse of the three girls.

Ortiz Baez filed an omnibus pretrial motion requesting, *inter alia*, discovery of reports, documents, or videotaped interviews pertaining to K.E.F.'s initial report against him in 2004, and severance of the complaint and information into three cases, one for each complainant's allegations, to be tried separately. The trial court conducted a pretrial hearing at which defense counsel again requested discovery pertaining to K.E.F.'s initial report in 2004. **See** N.T., 3/11/21, at 58-59. The prosecutor indicated that she intended to immediately contact both state and local police to attempt to locate the records from that report. **See id**. at 59. The trial court entered an order which, *inter alia*, required the Commonwealth to turn over the requested discovery regarding K.E.F.'s 2004 report as soon as possible, if it existed, and left open the application for severance. The trial court later entered an order denying Ortiz Baez's application for severance.

The matter proceeded to a jury trial. On the morning of trial, defense counsel explained to the trial court that the Commonwealth contacted her the previous day to tell her that VHS tapes of K.E.F.'s and Ortiz Baez's interviews with then-Trooper Maurice Nadachwoski from the 2004 report of abuse were

located and would be available for her to view the next morning.[2]  *See* N.T., 5/24/22, at 6.  Defense counsel requested that the trial court dismiss all the charges or, alternatively, continue the case to allow her to review the videotapes with her client.  *See id*. at 8.  The prosecutor represented that she had requested all records regarding the 2004 report after the pretrial hearing and was told by the Pennsylvania State Police that no evidence was located.  *Id*. at 14.  However, the day before trial, Detective Nadachowski was notified that the evidence was located.  *Id*. at 15.  The prosecutor conceded that this late disclosure constituted a discovery violation, and indicated that the Commonwealth would not use the evidence at trial.  *Id*.  The prosecutor further explained that the Commonwealth was working to convert the VHS tapes to a CD to give to the defense.  *Id*. at 16.  The trial court denied the defense motion for dismissal of all charges and released the jury for the day, giving Ortiz Baez and defense counsel the courtroom for the day to review the videos, once the Commonwealth converted them.  *Id*. at 23-24.

The following morning, defense counsel explained that she viewed the interview of K.E.F. and had technical issues with the recording due to its age, finding it to be slow and lacking a time stamp.  Defense counsel further indicated that there were substantive issues with K.E.F.'s interview, which referenced allegations of abuse by Ortiz Baez and his son, which were not

---

[2] In 2004, Maurice Nadachowski was a Trooper with the Pennsylvania State Police and separately interviewed K.E.F. and Ortiz Baez regarding K.E.F.'s allegations.  At the time of trial, Nadachowski was a Detective with the Chester County District Attorney's Office.

easily distinguishable. *See* N.T., 5/25/22, at 4. K.E.F.'s interview was also conducted in Spanish, and defense counsel transcribed the interview and translated it into English. *See id*. at 5. Defense counsel argued that K.E.F.'s interview included exculpatory evidence for Ortiz Baez. *Id*. at 7. Defense counsel renewed her motion for the dismissal of all charges, or, alternatively, a continuance to allow a neutral party to translate K.E.F's interview. *Id*. at 8. The Commonwealth claimed that the exculpatory evidence contained in the interview, namely, that in 2004, K.E.F. reported only that Ortiz Baez touched her over her clothing, was already in the record from the written report of K.E.F.'s disclosure, which was previously provided to Ortiz Baez in discovery in 2021. *Id*. at 9. The trial court instructed the parties to deliver their opening statements while Detective Nadachowski reviewed the transcript. *Id*. at 17. Prior to opening statements, the trial court instructed the jury on, *inter alia*, the need to keep each charge and each victim separate in their consideration of the evidence. *Id*. at 29. The transcript of K.E.F.'s 2004 interview was returned to defense counsel with some additions made by Detective Nadachowski, and both sides agreed to the accuracy of the translation. *Id*. at 67, 73.

K.E.F. testified that Ortiz Baez was a family member who babysat her and her siblings. *Id*. at 81-83. K.E.F. explained that when she was five years old, Ortiz Baez regularly took her into his kitchen, alone, pulled her pants and underwear down, pulled his own pants down, and rubbed his penis against her butt and vagina. *Id*. at 84-89. K.E.F. further testified that on four occasions,

Ortiz Baez inserted his penis into her vagina, and twice he inserted his penis into her mouth. *Id*. at 92. K.E.F. testified that she is related to D.A.E. and L.M.A., and they are five and six years younger than her, respectively. *Id*. at 78-80. K.E.F. explained that she recalled speaking to the police in a recorded interview in 2004 about her allegations against Ortiz Baez. *Id*. at 122.

Detective Nadachowski testified that he interviewed K.E.F. in 2004 when she was six years old. *See* N.T., 5/26/22, at 40-41. According to Detective Nadachowski, K.E.F.'s mother asked him not to pursue criminal charges against Ortiz Baez at the time. *Id*. at 42. Detective Nadachowski further testified that when he interviewed K.E.F. in 2004, she told him that Ortiz Baez had touched her vagina over her clothing. *Id*. at 52. Defense counsel did not enter the transcript of K.E.F.'s 2004 recorded interview into evidence. *Id*. at 64-65.

L.M.A. testified to her familial relationship to K.E.F. and D.A.E., and the fact that they spent time together growing up in the same community on Pemberton Road. *See* N.T., 5/25/22, at 147-48. L.M.A. explained that while she was not directly related to Ortiz Baez, she was related to both K.E.F. and D.A.E., who were related to him, and she knew him from living in the same community. *Id*. at 150. L.M.A. testified that one day when she was six or seven years old, she was outside and saw Ortiz Baez with a popsicle, so she asked him if she could have one and he brought her inside his house. *Id*. at 151-52, 166. L.M.A. testified that Ortiz Baez picked her up and tried to kiss her, but she resisted. *Id*. at 152.

D.A.E. testified to her familial relationship with K.E.F., L.M.A., and Ortiz Baez.  *Id*. at 193-95.  D.A.E. testified that when she lived in the community on Pemberton Road, she went to Ortiz Baez's house when she was four or five years old, whereupon he sat her on his lap and placed his hand inside her underwear and rubbed her vagina.  *Id*. at 200, 203, 206.

At the conclusion of trial, the jury found Ortiz Baez guilty of the above-referenced charges.[3]  The trial court ordered that a presentence investigation report be prepared as well as an assessment by the Sexual Offender Assessment Board to determine whether Ortiz Baez was a sexually violent predator ("SVP").

On October 19, 2022, the trial court conducted a sentencing hearing. At the conclusion of the sentencing hearing, the trial court determined that Ortiz Baez was an SVP, and sentenced him to an aggregate term of twenty-five years and nine months to fifty-one years and six months in prison.  Ortiz Baez filed a post-sentence motion requesting, *inter alia*, modification of his sentence.  The trial court granted Ortiz Baez's motion to modify sentence and re-sentenced him on May 24, 2023, to an aggregate sentence of twenty-one years and four months to forty-two years and four months in prison.  Ortiz Baez filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Ortiz Baez raises the following issues for our review:

_____

[3] The Commonwealth withdrew the remaining charges.

I.     Did the trial court err in denying [Ortiz Baez's] application for severance?

II.    Did the trial court err in failing to dismiss the prosecution or, in the alternative, continue the case after the Commonwealth produced two VHS tapes with recordings of [Ortiz Baez's] interview with law enforcement and [K.E.F.'s] interview with law enforcement in 2004?

Ortiz Baez's Brief at 3 (unnecessary capitalization omitted).

Ortiz Baez's first issue challenges the trial court's denial of his motion to sever, for which our standard of review is as follows:

A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

*Commonwealth v. Page*, 59 A.3d 1118, 1133 (Pa. Super. 2013).

Severance is governed by Pennsylvania Rule of Criminal Procedure 583, which provides: "The court may order separate trials of offenses . . ., or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. *See Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa. Super. 2003). As our Supreme Court has explained:

[T]he "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that appellant will be linked to the crimes

for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of *all* Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

*Commonwealth v. Collins*, 703 A.2d 418, 423 (Pa. 1997) (emphasis in original). Moreover, "the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself." *Id*. The fact that a defendant may have a better chance at acquittal in separate trials is not sufficient to require severance. *See Commonwealth v. Presbury*, 665 A.2d 825, 828 (Pa. Super. 1995).

Based on the foregoing, our Supreme Court established the following test for severance matters:

Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, . . . the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Collins*, 703 A.2d at 422 (quoting *Commonwealth v. Lark*, 543 A.2d 491, 496-97 (Pa. 1988)). "Where a trial concerns distinct criminal offenses that are distinguishable in time, space[,] and the characters involved, a jury is capable of separating the evidence." *Commonwealth v. Ferguson*, 107 A.3d 206, 211 (Pa. Super. 2015) (citation and quotation marks omitted)

(holding no risk of jury confusion when crimes involved different victims and were separated in time).

Pursuant to this test, we must first determine whether the trial court abused its discretion in holding that evidence of each of the offenses against each victim would be admissible in a separate trial for offenses against the other victims. In making this determination, we are mindful that evidence of another crime, wrong, or act is generally not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. *See* Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" and only when "the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Specifically, the common plan or scheme exception provides:

> [E]vidence of other crimes or bad acts may be admitted where the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Sufficient commonality of factors between the incidents dispels the notion that they are merely coincidental and permits the contrary conclusion that they are so logically connected they share a perpetrator.

***Commonwealth v. Kurtz***, 294 A.3d 509, 532 (Pa. Super. 2023) (citations and quotation marks omitted) (concluding that motion to sever was properly

- 9 -

denied where defendant was charged with raping five separate victims over a five year period).

Ortiz Baez argues that it may have been difficult for the jury to evaluate the merits of each complainant's allegations separately because the joint trial required them to acknowledge that there were three complainants with allegations of a sexual nature. Ortiz Baez concedes that the facts of each allegation were distinct, but claims that the jury "would lump the evidence and decide the case based on the evidence as a whole." Ortiz Baez's Brief at 15. Ortiz Baez posits that the jury may have found one complainant persuasive and then assumed that he committed the offenses alleged by the other two complainants. Specifically, Ortiz Baez claims that because L.M.A.'s allegations were less "graphic" than K.E.F.'s, they likely would not have resulted in convictions if tried separately. *Id*. Ortiz Baez argues that because all three complainants were young girls of Hispanic origin, the jury ignored the differences in their claims and treated them all the same. Ortiz Baez further claims that because the charges were brought in the same case, the jury was likely to believe they all occurred around the same time, when they actually occurred years apart.

Ortiz Baez contends that the allegations did not involve a common scheme, plan, or design, and evidence of each offense would not have been admissible in separate trials. To support this argument, Ortiz Baez highlights the differences in each complainant's allegations including the sexual acts

themselves, the years they occurred, and the relation of the victims to Ortiz Baez. Ortiz Baez argues that the allegations had no connection to each other beyond himself being the perpetrator. Ortiz Baez claims there was no evidence of a shared motive, intent, or absence of mistake linking the offenses together. Ortiz Baez argues that he was unfairly prejudiced by the denial of his motion to sever because it impacted his defense, trial strategy, witnesses, and his decision whether to testify.

The trial court considered Ortiz Baez's first issue and concluded that it lacked merit. The trial court reasoned:

> . . . [I]t is clear that it was proper for this court to deny [Ortiz Baez's] request to sever the charges. The record shows that on April 11, 2019, the police received a Childline report regarding child victim D.A.E., then fifteen years old, regarding alleged sexual abuse. The report indicated that D.A.E. stated that she had been sexually abused by [Ortiz Baez] after a cousin's birthday party, before she was six years old. D.A.E. was forensically interviewed on May 2, 2019, and she revealed that [Ortiz Baez] had put his hand under her dress and touched her vaginal area at his residence on Pemberton Road in New Garden Township, Chester County. During that interview D.A.E. revealed that two other relatives, K.E.F. and L.M.A., had also been abused by [Ortiz Baez].
>
> * * * *
>
> On May 22, 2019, then twenty-year-old K.E.F. was interviewed by the police and revealed that when she was approximately five years old, [Ortiz Baez] and his wife would babysit her and her brothers at their home on Pemberton Road while their parents worked. K.E.F. disclosed that [Ortiz Baez] took her into the kitchen while his wife slept and sexually assaulted her on multiple occasions. He pulled her pants and his own pants down, rubbed his penis on her butt, and ejaculated on to her body and clothing while this rubbing occurred. K.E.F. further revealed

that [Ortiz Baez] sexually abused her in other ways, including putting his penis in her mouth on multiple occasions.

On May 23, 2019, L.M.A.'s mother went to the police to report that [Ortiz Baez] "hugged" L.M.A. and tried to teach her "how to kiss" approximately nine years prior. On May 28, 2019, the fourteen-year-old L.M.A. revealed during a forensic interview that when she was six years old visiting relatives, she was in [Ortiz Baez's] residence and he picked her up by both arms and attempted to kiss her. L.M.A. struggled, [Ortiz Baez] eventually released her, and she ran from his home.

Just over four months from the first Childline report, the criminal complaint was filed on August 29, 2019 charging [Ortiz Baez] with the abuse of D.A.E., K.E.F., and L.M.A. Even though the abuse of the three victims when they were children took place between approximately 2003 and 2011, the investigation of the abuse of each victim was entwined and only took about four months to complete. As the investigation unfolded, the names of additional victims were disclosed to the police. It is clear that the abuse of the three victims was part of a single, ongoing criminal episode by [Ortiz Baez].

Evidence of each of the instances of abuse would be admissible in separate trials for each victim and would involve the duplication of a majority of evidence at three separate trials. The evidence is admissible to show the pattern of criminal conduct by [Ortiz Baez] where he sexually abused young girls in his home on Pemberton Road in New Garden Township. Even though the exact acts [Ortiz Baez] committed against each victim were slightly varied, they were similar in nature, including his pattern of conduct. The type of victim chosen by [Ortiz Baez] was a pre-pubescent Hispanic female between five and eight years old with some family or friend relationship to [Ortiz Baez] and his family. [Ortiz Baez's] actions formed the chain or sequence of events that told the entire story of his ongoing criminal conduct against young girls that found themselves in [Ortiz Baez's] home for various reasons. The admissibility of the evidence involving the three victims showed [Ortiz Baez's] common plan, scheme, or design and established [Ortiz Baez's] purpose and intent to commit the offenses. It also refuted a defense of mistake or accident. Therefore, this court determined that the evidence of each of the offenses would be admissible in a separate trial for the others.

Next, the court evaluated whether the evidence was capable of separation by the jury so as to avoid danger of confusion. . . . Based on the proffered facts it was clear to this court that the evidence would be capable of separation by the jury and would not cause confusion. Each of the three child victims encountered [Ortiz Baez] in his home in three distinct ways and had separate results that would easily distinguish them.

. . . Even though the victims were Hispanic females of similar age and the crimes occurred in [Ortiz Baez's] home, each are easily distinguishable, capable of separation, and would not cause confusion with the jury.

Turning to the final analysis of whether [Ortiz Baez] would be unduly prejudiced by not severing the offenses, this court determined that the highly probative value of the evidence far outweighed any potential prejudice. . . .

. . . [I]t was proper to find that the probative value of the evidence far outweighed the prejudicial effect. Accordingly, this court did not err when it denied [Ortiz Baez's] request to sever the charges. It must also be noted that this court instructed the jury as to how they could consider the evidence of other crimes . . .

[The] standard jury instruction properly limited the prejudicial effect of the evidence against [Ortiz Baez] and further diminished any danger of confusion of the evidence. . . . Consequently, based upon the severance test and the totality of the circumstances, this court's severance ruling was proper and [Ortiz Baez's] allegation on appeal should be dismissed.

Trial Court Opinion, 10/24/23, 8-13 (unnecessary capitalization omitted).

Following our review, we discern no abuse of discretion by the trial court in denying Ortiz Baez's motion to sever. Evidence of Ortiz Baez's crimes against each victim would be admissible in separate trials for each victim to show Ortiz Baez's common plan, scheme, or design to sexually abuse young female children, who had familial ties to him, in his home. Ortiz Baez's crimes

reflect his habits and patterns of conduct. Namely, he created situations where he was alone in his home with young girls, who viewed him as an older family figure, and then abused them. There is sufficient commonality of factors between the abuse of the three victims to dispel the notion that they were merely coincidental or a mistake, and to permit the conclusion that they were logically connected through Ortiz Baez. *See Kurtz*, 294 A.3d at 532.

We additionally discern no abuse of discretion by the trial court in arriving at its determination that Ortiz Baez failed the establish that the jury was incapable of separating the crimes to avoid confusion. The three victims each alleged distinct criminal offenses surrounding their sexual assaults by Ortiz Baez which were distinguishable by years, specific spaces in Ortiz Baez's home, and the people involved, which was clear because each victim testified separately as to their own abuse. *See Ferguson*, 107 A.3d at 211.

Finally, we discern no abuse of discretion by the trial court in reaching its conclusion that Ortiz Baez failed to establish prejudice as a result of the denial of severance. Ortiz Baez did not establish that the evidence of his offenses against the other victims showed nothing more than his propensity to commit crimes, or that such evidence which was cumulative or incapable of separation. *See Collins*, 703 A.2d 418 at 423. Further, Ortiz Baez's argument that he may have been acquitted of his crimes against L.M.A. in a separate trial is not sufficient to show prejudice. *See Presbury*, 665 A.2d at 828. Accordingly, Ortiz Baez's first issue merits no relief.

In Ortiz Baez's second issue, he contends that the trial court erred in denying his motion for dismissal of all charges or a continuance of the trial based on a discovery violation. Our standard of review for such a ruling is as follows:

> If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. Our scope of review is whether the court abused its discretion in not excluding evidence . . . A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery does not automatically entitle appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the late disclosure.

*Commonwealth v. Brown*, 200 A.3d 986, 993 (Pa. Super. 2018) (citations and quotation marks omitted).

Ortiz Baez claims that the late discovery of the VHS interview of K.E.F. constituted a *Brady*[4] violation. In order to successfully claim a *Brady* violation, the accused must show: (1) that the evidence in question is either exculpatory or impeaching; (2) the evidence was suppressed by the Commonwealth; and (3) the accused was prejudiced by the suppression. *See Commonwealth v. Natividad,* 200 A.3d 11, 26 (Pa. 2019).

Ortiz-Baez argues that the trial court abused its discretion in denying his request for a continuance, resulting in prejudice to the preparation and

---

[4] *See Brady v. Maryland*, 373 U.S. 83 (1963).

- 15 -

presentation of his defense. Ortiz Baez contends that, because he wished to use the evidence which was the subject of the discovery violation, he should have been granted a continuance to manipulate the videotape into a more functional form to show the jury. Ortiz Baez claims that the remedy provided by the trial court, in allowing a transcript of the interview to be used instead of the videotape, was inadequate as it was rushed to be finished before K.E.F. testified. Ortiz Baez asserts that he was prejudiced because defense counsel did not have time to incorporate the material from the interview into the defense as a whole. Ortiz Baez argues that the videotape constituted **Brady** material and the trial court deprived him of a full and fair trial by not ordering a continuance.

The trial court considered Ortiz Baez's second issue and determined that it lacked merit. The trial court reasoned:

> It is abundantly clear that turning over the interviews on the eve of trial was not an intentional act by the Commonwealth meant to prejudice [Ortiz Baez]. It would have been improper for this court to grant [Ortiz Baez's] oral motion to dismiss the charges based on the late discovery of the videos. The proper remedy of precluding the Commonwealth from playing the videos was self-imposed by the Commonwealth and this court agreed with that limitation.
>
> There was also no need to grant [Ortiz Baez's] continuation request. The defense team was provided with the videos and was given technical help in the courtroom to allow them to play the videos for as long as was necessary. The trial was delayed while the transcript of the interviews was re-worked and agreed upon by the parties. It was unnecessary to grant a continuance of the trial and doing so would not have been a proper use of judicial resources. [Ortiz Baez] was not prejudiced. Accordingly, this issue on appeal is wholly without merit and should be dismissed.

Trial Court Opinion, 10/24/23, at 31-32.

We discern no abuse of discretion by the trial court in its denial of Ortiz Baez's request for a continuance. The record is clear that the trial court provided Ortiz Baez with time to review the videotapes and assistance in transcribing the videotapes at the inception of trial. Furthermore, there is no support in the record for Ortiz Baez's assertions that the discovery violation amounted to a *Brady* violation. First, Ortiz Baez does not explain with any particularity how K.E.F.'s interview was exculpatory or impeaching in nature. Moreover, the trial court determined that the Commonwealth did not intentionally suppress the evidence, as would be required for a *Brady* violation. Finally, Ortiz Baez has not shown how he was prejudiced by the late disclosure because the fact that K.E.F. previously reported a less serious sexual offense in 2004 was already known to him. Indeed, Ortiz Baez did not even use the agreed-upon transcription of K.E.F.'s 2004 interview or move to admit it in to evidence at trial because Detective Nadachowski testified consistently with the contents of the 2004 interview. Finally, as a sanction for the late disclosure, the Commonwealth voluntarily did not use the transcripts at trial for any purpose. Accordingly, Ortiz Baez's second issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>8/12/2024</u>